[L.A. No. 32043. Aug. 25, 1986.]

PHILIP R. HECKENDORN, Plaintiff and Appellant, v.
CITY OF SAN MARINO, Defendant and Respondent.

COUNSEL

Philip R. Heckendorn, in pro. per., for Plaintiff and Appellant.

Howard J. Privett, Penny M. Costa and McCutchen, Black, Verleger & Shea for Defendant and Respondent.

Jean Leonard Harris, City Attorney (Rancho Mirage), and David J. Erwin, City Attorney (Palm Desert), as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**REYNOSO, J.**—What does the term "ad valorem tax" mean in article XIII A of the California Constitution? We conclude that an ad valorem tax, unlike the tax here involved, is any source of revenue derived from applying a property tax rate to the assessed value of property.

The City of San Marino (City) drafted an ordinance purporting to levy a special tax for police and fire services. The ordinance went into effect after approval by more than two-thirds of the City's voters. Philip R. Heckendorn, a City property owner, filed a complaint for declaratory relief and injunction, alleging that the ordinance violated article XIII A because it created an ad valorem tax on real property exceeding the constitutional limitation imposed on such taxes. The trial court sustained the City's general demurrer without leave to amend. We affirm the judgment because, as a matter of law, the proposed special tax does not constitute an ad valorem tax on real property.

## I.

On February 25, 1983, the City drafted Ordinance No. 851 pursuant to Government Code section 53978,[1] which authorizes local agencies to propose an ordinance for a special tax for fire and police protection, subject to the requirement of approval by two-thirds of the qualified voters. The ordinance went into effect after approval by approximately 80 percent of the City's voters on June 7, 1983.

The ordinance imposes a graduated tax based on the City's zoning classifications, which are determined by real property parcel size.[2] Within each

---

[1]Government Code section 53978 provides in pertinent part: "(a) Any local agency which provides fire protection or prevention services directly, . . . or which provides police protection services, may, by ordinance, determine and propose for adoption a special tax for fire protection and prevention provided by the local agency, or a special tax for police protection services provided by the local agency, or both . . ., other than ad valorem property taxes, pursuant to this section. The legislative body may establish zones or areas within the local agency and may restrict the levy of the special tax to those zones or areas. Such proposition shall be submitted to the voters of the affected area or zone, or of the district, and shall take effect upon approval of two-thirds of the voters voting upon such proposition. . . . [¶] (b) The ordinance submitted to voter approval . . . shall specify the amount of each of such special taxes. Each of such special taxes shall be levied on a parcel, class of improvement to property, or use of property basis, or a combination thereof, . . . for the purpose of obtaining, furnishing, operating, and maintaining fire suppression and police protection equipment or apparatus . . ., for paying the salaries and benefits to firefighting and police protection personnel . . ., and for such other necessary fire protection and prevention expenses and police protection expenses, . . . [¶] (c) The amount of each such special tax established by the legislative body, and approved by the voters of the local agency, may be varied to each parcel, improvement, or use of property based on the degree of availability of fire protection and prevention services or police protection services, respectively, in the affected area . . . ."

[2]The ordinance provides in pertinent part: "SECTION 1. Pursuant to the authority of California Government Code, section 53978, there is hereby levied and assessed a special tax by the City of San Marino on each parcel of property in the City of San Marino for each fiscal year, commencing with the fiscal year 1983-84 and ending with the fiscal year 1986-87.

"SECTION 2. Said special tax for each fiscal year shall be as follows:

| | Residential Zones | No. Parcels | Residential Factor | "SAN MARINO POLICE AND FIRE Levy and Assessment | | | |
| | | | | 1983-84 | 1984-85 | 1985-86 | 1986-87 |
|---|---|---|---|---|---|---|---|
| I | (22,500) | 271 | 3.00 | $ 588 | $ 645 | $ 731 | $ 818 |
| II | (20,000) | 375 | 2.63 | 489 | 565 | 641 | 717 |
| III | (17,000) | 23 | 2.19 | 407 | 470 | 533 | 596 |
| IV | (15,000) | 353 | 1.89 | 352 | 407 | 461 | 516 |
| V | (12,000) | 1,499 | 1.44 | 268 | 310 | 351 | 393 |
| VI | (10,000) | 674 | 1.15 | 214 | 247 | 280 | 314 |
| VII | ( 9,000) | 1,294 | 1.00 | 186 | 215 | 244 | 273 |
| Commercial Zones | | | | | | | |
| I | (-50') | 31 | | 450 | 520 | 590 | 660 |
| II | (50'-100')* | 80 | | 700 | 809 | 917 | 1,026 |
| III | (100'+) | 31 | | 1,200 | 1,386 | 1,572 | 1,759 |

zone, the ordinance imposes a flat tax rate on all parcels, despite any variations in size, improvements and ultimate value. For example, all parcels of 12,000 to 15,000 square feet (Zone V) would be taxed at $351 in 1985-1986. By its own terms, the ordinance will expire on June 30, 1987.

Heckendorn owns property within the City and was taxed under the ordinance. He filed a complaint alleging that the ordinance violated article XIII A because it imposed an ad valorem tax exceeding the maximum amount allowed by the California Constitution.[3] The City demurred, claiming that the ordinance was based solely on parcel size and did not impose a tax based on the application of a property tax rate to an assessed value of property. The trial court sustained the City's general demurrer without leave to amend and Heckendorn appealed.

## II.

Heckendorn claims on appeal that the trial court abused its discretion in sustaining the City's demurrer without leave to amend. He asserts that he

| Miscellaneous Zones | | | | | |
|---|---|---|---|---|---|
| Unimproved | 42 | 99 | 114 | 130 | 145 |
| Split | 7 | 69 | 80 | 90 | 101 |
| Unassessable | 105 | | | | |
| | 4,740 | | | | |
| Sub Total Zone Charges | | $1,358,283 | $1,570,008 | $1,779,565 | $1,991,642 |
| Less Credits | | (67,965) | (80,465) | (92,965) | (105,465) |
| Huntington Library | | 10,000 | 11,552 | 13,104 | 14,656 |
| TOTAL | | $1,300,318 | $1,501,095 | $1,699,704 | $1,900,833 |

"CREDITS SUMMARY—PARCELS SOLD AFTER 3/01/75

"Homes purchased in 1975—$20; 1976—$20; 1977—$25; 1978—$30; 1979—$35; 1980—$40; 1981—$45; 1982-87—$50.

"*Including churches, non-profit property holdings and the like.

"(a) The zones shall be those designated on the official zone map of the City, and the parcels shall be those described in the 'Report' filed January 31st in the office of the City Clerk as to which individual notices were previously mailed.

"(b) An official (tax levy) Assessment Book designating the proposed tax on each parcel is on file in the office of the City Clerk and is incorporated herein by reference.

"(c) The records of the Los Angeles County Assessor as of March 1st of each year preceding the applicable fiscal year shall determine whether or not any particular lot is unimproved for the purposes of this section. 'Parcel of property' as used in this Ordinance shall mean any contiguous unit of improved or unimproved real property held in separate ownership, including, but not limited to, any single family residence, or any other unit of real property subject to the California Subdivided Lands Act (Business and Professions Code, section 11000, et seq.).

"(d) The tax imposed by this Ordinance shall be a tax upon each parcel of property, and the tax shall not be measured by the value of the property.

"(e) As required by Government Code, section 53978(b), the City Council has determined that 59.5 percent of each levy of such special tax shall be for police protection, and that 40.5 percent shall be for fire protection."

[3]Article XIII A reads in part: "Section 1. (a) The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. . . . [¶] Sec. 4. Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, *except ad valorem taxes on real property. . . .*" (Italics added.)

could amend his complaint to show that there is a correlation between the size of a parcel and its value, and consequently that the ordinance's graduated tax is essentially ad valorem in nature. Furthermore, he alleges that the City proposed this graduated tax only after a prior flat tax was defeated at the polls. According to his proposed amended complaint, the voters rejected the prior flat tax because they regarded it as a "specific" tax that was unfair to the owners of smaller lots.

██ In reviewing an order sustaining a demurrer without leave to amend, "the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties." (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) If it is reasonably possible that plaintiff can cure a defective complaint by amendment, or that the pleading liberally construed can state a cause of action, the trial court should not sustain a demurrer without leave to amend. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].) However, a trial court does not abuse its discretion by sustaining a general demurrer without leave to amend if it appears from the complaint that under applicable substantive law there is no reasonable possibility that an amendment could cure the complaint's defect. (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].)

Article XIII A, section 1 of the California Constitution limits ad valorem taxes on real property to 1 percent of the property's full cash value. Section 4 of that article restricts the ability of cities, counties and special districts to impose special taxes by requiring a two-thirds vote of approval by qualified electors. Section 4 also prohibits the imposition of a special tax that is an ad valorem tax on real property.

██ We must determine what the term "ad valorem tax" means in article XIII A. "In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) Article XIII A itself contains no definition of ad valorem tax. Since article XIII A was approved by the voters as Proposition 13 in 1978, however, we may turn to extrinsic aids, such as the legislative analysis accompanying the ballot that was presented to the electorate, for assistance "in determining the probable meaning of uncertain language." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281].) In discussing section 4 of article XIII A, the Legislative Analyst states in general terms that the measure authorizes cities "to impose un-

specified 'special' taxes only if they receive approval by two-thirds of the voters. Such taxes could not be based on the value or sale of real property." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 6, 1978) p. 57.) This analysis provides little authoritative guidance to the meaning of ad valorem tax.

■ In the absence of evidence of a contrary legislative or popular intent, terms used in a constitutional amendment are normally construed in light of existing statutory definitions or judicial interpretations in effect at the time of the amendment's adoption. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 850 [59 Cal.Rptr. 609, 429 P.2d 593]; *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 979 [156 Cal.Rptr. 777].) ■ When the voters approved Proposition 13 in 1978, the Legislature had already defined ad valorem property taxation in Revenue and Taxation Code section 2202 to mean "any source of revenue derived from applying a property tax rate to the assessed value of property."[4] Under this definition, the City's ordinance does not constitute an ad valorem tax. The City's voters approved a graduated tax based on residential zones that include lots varying in size. Pursuant to the ordinance, no appraisal of value is made. Parcels within a zone are taxed the same even if the actual value of the parcels differs. The ordinance properly imposes a tax on each parcel of property in accordance with the scheme established in Government Code section 53978.

Heckendorn argues that ad valorem should be broadly construed as in Revenue and Taxation Code section 2237.3, subdivision (f), which states, "For purposes of this section, an 'ad valorem property tax' means any tax or assessment imposed on the basis of the value of the real property, including any special ad valorem assessment." We reject this argument. First, the drafters of Proposition 13 did not have the definition found in section 2237.3, subdivision (f) before them, since this section was enacted in 1982 *after* Proposition 13 was approved. (Stats. 1982, ch. 45, § 3, pp. 134-135.) Second, the Legislature expressly limited applicability of the definition of ad valorem property tax in subdivision (f) to section 2237.3. Finally, in enacting section 2237.3, the Legislature intended "to make available to the public information on ad valorem property taxes levied by local governments at rates" exceeding the limits imposed by article XIII A. (Stats. 1982, ch. 45, § 5, p. 136.) However, the Legislature did not intend "to address in any way the constitutionality of any ad valorem property taxes levied. . . ." (*Ibid.*) Simply put, section 2237.3 is a reporting requirement, which broadly

---

[4]In 1978, the definition of ad valorem property taxation in section 2202 applied to chapter 3 (Rev. & Tax. Code, §§ 2201-2327), which was entitled "Maximum Property Tax Rates for Local Agencies." Since Proposition 13 related to the general subject of property tax relief, it is reasonable to construe ad valorem tax in light of the definition found in the Revenue and Taxation Code's chapter on property tax rates for local agencies.

defines ad valorem property tax to include "assessments" not even included within the ambit of article XIII A. (See, e.g., Rev. & Tax. Code, § 2237.3, subd. (b)(2); cf. *County of Fresno* v. *Malmstrom, supra,* 94 Cal.App.3d at pp. 985-986, *City Council* v. *South* (1983) 146 Cal.App.3d 320, 332 [194 Cal.Rptr. 110]; *J. W. Jones Companies* v. *City of San Diego* (1984) 157 Cal.App.3d 745, 758 [203 Cal.Rptr. 580].) Its broad definition of ad valorem property tax is not apposite for a construction of this term in article XIII A.[5]

We also note that the Legislature expressly authorized a special tax for police and fire protection in Government Code section 53978. ▮ When a constitutional provision has a doubtful or obscure meaning, there is a strong presumption in favor of the Legislature's interpretation of the provision. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161]; *Reynolds* v. *State Board of Equalization* (1946) 29 Cal.2d 137, 140 [173 P.2d 551, 174 P.2d 4].) Apparent ambiguities in a constitutional provision "frequently may be resolved by the contemporaneous construction of the Legislature or of the administrative agencies charged with implementing the new enactment." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at p. 245.)

Government Code section 53978, subdivision (b) states that a special tax "shall be levied on a parcel, class of improvement to property, or use of property basis, or a combination thereof. . . ." The Legislature intended that a special tax levied on a parcel pursuant to section 53978 would be distinct from an ad valorem tax prohibited by article XIII A, section 4. We regard this legislative construction of special tax to have "very persuasive significance" in our analysis of article XIII A. (*Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 569 [154 P.2d 674].) In addition, we interpret "parcel" in this statute broadly to allow a graduated tax based on the size of a parcel as in the City's ordinance. To construe the term parcel otherwise would lead to the unjust result that any special tax imposed on a parcel basis under this statute would have to be equal for a lot of 9,000 square feet and an estate the size of Huntington Library. (Cf. *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259-260 [104 Cal.Rptr. 761, 502 P.2d 1049] [statutory language should be construed to best attain the statute's purpose in order to avoid absurdity or to prevent injustice].)

Finally, our interpretation of ad valorem property tax complies with the purpose of article XIII A, section 4, which requires a two-thirds vote of

---

[5]Heckendorn also points to Revenue and Taxation Code section 10758, which refers to ad valorem taxes as "all taxes according to value." Section 10758's reference to ad valorem taxes is inapplicable because the section deals with license fees for vehicles, not real property taxes, which is the subject of article XIII A, section 4.

approval for a special tax "to prevent the government from recouping its losses from decreased property taxes by imposing or increasing other taxes." (*Huntington Park Redevelopment Agency* v. *Martin* (1985) 38 Cal.3d 100, 105 [211 Cal.Rptr. 133, 695 P.2d 220].) We have defined "special taxes" in section 4 to mean taxes levied for a specific purpose rather than a levy placed in the general fund to be utilized for general governmental purposes. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 57 [184 Cal.Rptr. 713, 648 P.2d 935].) Here, approximately 80 percent of the voters of San Marino approved a tax levied for a specific purpose—to provide them with adequate police and fire protection. This vote fully complied with section 4's supermajority requirement and indicated the voters' willingness to be taxed for essential services affected by the reduction of revenue caused by article XIII A. ■ We conclude that the trial court properly sustained the City's general demurrer to Heckendorn's complaint without leave to amend because under applicable law there is no reasonable possibility that an amendment could cure the complaint's defect.

The judgment is affirmed.

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., Lucas, J., and Panelli, J., concurred.