[No. F008064. Fifth Dist. May 23, 1988.]

ESTHER TOVAR et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and
Respondent.

## COUNSEL

Robert F. Kratky, Houk, Hicks, Spain & Line and Lloyd L. Hicks for Plaintiffs and Appellants.

F. Leonard Sisk, Harry W. Young, James A. Trecartin, Kingsley Hines, Howard L. Collins, Barbara L. Sorem and Donald A. Redd for Defendant and Respondent.

## OPINION

**HAMLIN, Acting P. J.**—Esther Tovar and 10 other plaintiffs appeal from a judgment dismissing their complaint for damages against Southern California Edison Company (SoCal) after the trial court sustained SoCal's demurrer to plaintiffs' only cause of action against it without leave to amend.

We are here called upon to decide when, if ever, a public utility company becomes tortiously liable to the actual users of utility services for violating

the notice requirements specified in Public Utilities Code section 777[1] by terminating those services at the direction of a master customer.[2] The statute has received no prior judicial construction and thus presents a case of first impression. We will conclude such liability may arise only if the utility company's failure to give the notice of pending termination required by section 777 is the proximate cause of damages suffered by the users of utility services as a result of the termination. Under the circumstances of the instant case, plaintiffs have alleged no facts upon which to predicate the requisite element of causation. Since it appears plaintiffs cannot, we will affirm the judgment.

## PROCEDURAL BACKGROUND

On May 22, 1986, plaintiff Esther Tovar and 10 other named plaintiffs filed a verified complaint for damages against SoCal, a public utility company, and 10 other named defendants, as owners or managers of the Starbuck Motel in the City of Visalia where plaintiffs resided as month-to-month tenants. The complaint alleged causes of action for (1) breach of the implied warranty of habitability, (2) nuisance, (3) constructive eviction, (4) termination of utility services (Civ. Code, § 789.3), (5) interference with use of the premises, (6) trespass, and (7) conversion. SoCal was named only in the fourth and fifth causes of action which alleged that plaintiffs' utility services at the subject premises had been shut off.

SoCal demurred, generally (Code Civ. Proc., § 430.10, subd. (e)) and specially on the ground of uncertainty (Code Civ. Proc., § 430.10, subd. (f)), and moved to strike portions of plaintiffs' complaint. Before the hearing, plaintiffs filed an unverified first amended complaint which designated the fifth cause of action as a "Tort in Essence" based on SoCal's alleged failure to comply with the provisions of section 777. Plaintiffs then stipulated in writing that the only cause of action in their first amended complaint that is directed against SoCal is the fifth cause of action. SoCal filed a general demurrer,[3] claiming plaintiffs had failed to state a cause of action against it, and moved to strike portions of the complaint. In opposing SoCal's demurrer, plaintiffs argued SoCal's failure to give plaintiffs notice of an intent to

---

[1] Further statutory references are to the Public Utilities Code unless otherwise indicated.

[2] We use the term "master customer" to mean either the named customer/subscriber of record controlling a master meter account or individually metered accounts billed to a single central customer.

[3] SoCal abandoned its special demurrer on the ground that plaintiffs' theory of liability was uncertain. Since the only possible uncertainty in plaintiffs' amended complaint concerns SoCal's justification for terminating utility services, an uncertainty essential to the cause of action itself, SoCal could rely upon a general demurrer to challenge the complaint. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 634 [137 Cal.Rptr. 681].)

shut off utilities at least 10 days before it terminated those services gave rise to liability for violation of section 777.

In sustaining SoCal's demurrer without leave to amend, the trial court explained: "It is the opinion of this Court that § 777 of the Public Utilities Code imposes a duty only when service is terminated due to a delinquency in payment. The allegations here are that termination was due to causes other than delinquency in payment.

"Insofar as Defendant's Motion to Strike has been rendered moot by this order, the same is denied with leave to its being renewed, should this order be reversed . . . ."

## DISCUSSION

Plaintiffs' only argument to the trial court and, initially, on appeal, was that the four-day notice of intent to terminate utility services for nonpayment furnished by SoCal on November 14 did not satisfy the requirements of section 777. Plaintiffs argued this defective notice rendered SoCal liable to plaintiffs in tort even though SoCal actually terminated utility services on November 15 at the specific direction of its customer (who as landlord and/or manager of the motel units where plaintiffs resided had been named separately as a defendant in this action) and not for delinquencies in the customer's account. Plaintiffs have argued that defective notice given on November 14 gave rise to SoCal's liability in tort regardless of the actual reason for termination. Plaintiffs have ignored the basic elements necessary to create liability in tort.

At the time of the events alleged in plaintiffs' complaint, section 777 provided in relevant part: "(a) Where utility service is provided by a public utility subject to Section 779 or 780 to residential occupants through a master meter or where individually metered residential service is furnished in a multiunit residential structure, mobilehome park, or farm labor camp where the owner or manager of the multiunit residential structure, mobilehome park, or the farm labor employer is listed by the utility as the subscriber of record of the utility service, the public utility shall make every good faith effort to inform the occupants that service will be terminated at least 10 days prior to termination. The notice shall further inform the occupants that they have the right to become utility customers, to whom the service will then be billed, without being required to pay any amount which may be due on the account.

" . . . . . . . . . . . . . . . . . . . . . . . ."

■ As originally enacted as an addition to the Public Utilities Code (Stats. 1976, ch. 1033, § 1, p. 4624), section 777, subdivision (a), made specific reference to an intent to terminate service "when the account is in arrears." Although this language was deleted when section 777 was amended to the version in effect at the time of the events upon which plaintiffs' complaint is based (Stats. 1981, ch. 441, § 1, p. 1685), our review of the legislative history of Assembly Bill No. 830, 1981-1982 Regular Session, persuades us that the purpose of this amendment was not to broaden the circumstances under which the utility company must give 10 days' notice of proposed termination but to broaden the class of actual users to whom this protection must be extended. Thus while as originally enacted section 777 provided that notice of intent to terminate for nonpayment must be provided to actual users of utility services who receive such services through a master meter, Assembly Bill No. 830 extended this protection to users of individually metered residential service living in a multiunit residential structure, total billing for which is directed solely to one subscriber of record, usually the landlord or manager.

Consistent with our analysis of the legislative history of section 777, plaintiffs have conceded this statute applies only when termination of utility services is proposed because of arrearages in the master customer's account. Plaintiffs alleged in their complaint that "[o]n or about November 14, 1985, at 12:56 p.m., an employee of defendant, Southern California Edison Company, left a notice for all plaintiffs residing on the subject premises, such notice stating that electric service will be discontinued on November 18th." Reference to that notice, attached to plaintiffs' complaint as exhibit B, shows (1) it was addressed to the master customer, Simon Younger, (2) advising him of a $130.01 arrearage in his account and (3) advising him that utility services were subject to termination without further notice if the amount was not paid by November 18, four days from the date of the notice. Since it appears from this notice that SoCal did intend to terminate utility services on a master metered account for nonpayment, we do not question the applicability of section 777. However, we must not lose sight of the posture in which this case is presented to us. The issue here is not merely the applicability of the statute. Plaintiffs, attempting to state a cause of action sounding in tort, seek to recover damages for violation of the statute; to prevail against SoCal's general demurrer, plaintiffs must allege facts sufficient to satisfy each element of their cause of action.

Clearly under the circumstances we have described, SoCal's *duty* to comply with the requirements of section 777 arose when, on or before November 14, 1985, it proposed to terminate utility services to plaintiffs, as actual users, because of delinquencies in the account of the master customer. We have already described the notice SoCal provided; the deficiencies in this

notice in light of section 777 are so glaring they need no further discussion. Thus we conclude plaintiffs have alleged facts sufficient to demonstrate not only that SoCal owed them a duty to give proper notice of intent to terminate services because of delinquencies in the account of the master customer, but that SoCal breached that duty. However, the absence of facts sufficient to show the third element necessary to a valid cause of action in tort, causation, is fatal to plaintiffs' complaint.

In the fourth cause of action directed against the owners and managers of the motel for termination of utility services with the intent to terminate plaintiffs' tenancy, for which plaintiffs sought compensatory, punitive, and statutory damages pursuant to Civil Code section 789.3, subdivision (c),[4] plaintiffs alleged: "On or about November 7, 1985, defendants Terry G. Hill, Jerry Hill, Simon N. Younger, L. D. Younger and Cliff Younger, with intent to terminate all plaintiffs['] occupancy of the premises, did willfully and maliciously, directly and indirectly, cause the termination and interruption of plaintiffs' natural gas and electric utility services. On or about November 15, 1985, the above defendants, with the intent to terminate plaintiffs' occupancy of the premises, did willfully and maliciously, directly and indirectly, cause the termination and interruption of plaintiffs' water service. Plaintiffs' electricity service was turned on again on or about November 7, 1985. On or about November 15, 1985, the above named defendants, with the assistance of the Southern California Edison Company, did willfully and maliciously, cause the re-termination and interruption of plaintiffs' electricity service. All plaintiffs were without utility service as a result of these actions until they individually vacated the premises." These specific allegations are incorporated by reference into plaintiffs' fifth cause of action, the only cause of action directed against SoCal, where plaintiffs further alleged: "On or about the afternoon of November 15, 1985, defendant Doe 1, as an employee of Southern California Edison Company, acting within the course and scope of his employment, came upon the premises driving a truck identified as owned by Southern California Edison Company, and caused the immediate termination of plaintiff's [sic] electric utility service. Plaintiffs allege that defendants failed to make every good faith effort to inform plaintiffs by means of a notice that service will be terminated at least 10 days prior to termination."

 Read together, the only reasonable inference that can be drawn from plaintiffs' allegations is that despite SoCal's announced intention on

---

[4] Civil Code section 789.3, subdivision (a), prohibits a landlord, acting with the intent to terminate the occupancy of his tenants, from "willfully caus[ing], directly or indirectly, the interruption or termination of any utility service furnished the tenant, including, but not limited to, water, heat, light, electricity, gas, telephone, elevator, or refrigeration, whether or not the utility service is under the control of the landlord." The statute provides for specified liquidated or punitive damages as well as actual compensatory damages.

November 14 to terminate plaintiffs' utility services because of arrearage in the account of its master customer, SoCal's actual termination of those services on November 15, three days before the termination date stated in the defective notice, was at the direction of SoCal's customer, Simon Younger. Plaintiffs have not argued to the contrary either in the trial court or on appeal.

Plaintiffs also have failed to challenge SoCal's contention that, as a public utility company, it is required to honor a customer's request that service be terminated within two days; failure to do so relieves the customer of further liability for payment.

In the state of the record before us, plaintiffs' bare assertion that SoCal's notice that failed to comply with the requirements of section 777 directly and proximately caused plaintiffs' damage is not enough. The pleading of that conclusion is inconsistent with the facts alleged in the fourth cause of action in plaintiffs' original complaint that was verified under penalty of perjury. These are the same allegations that appeared in the fourth cause of action stated in plaintiffs' first amended complaint and incorporated into the fifth cause of action in the first amended complaint. ■ As our Supreme Court pointed out in *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 328 [253 P.2d 659]: "Furthermore, although a plaintiff may plead inconsistent counts or causes of action in his complaint [citation] even where, as here, it be verified, if there are no contradictory or antagonistic facts [citations], we are in accord with the view stated by the court in the Beatty case [*Beatty* v. *Pacific States S. & L. Co.* (1935) 4 Cal.App.2d 692, 697 (41 P.2d 378)] that the rule was not 'intended to sanction the statement in a verified complaint of certain facts as constituting a transaction in one count or cause of action, and in another count or cause of action a statement of contradictory or antagonistic facts as constituting the same transaction. In short, the rule does not permit the pleader to blow both hot and cold in the same complaint on the subject of facts of which he purports to speak with knowledge under oath.'" ■ No fact was averred in plaintiffs' first amended complaint which shows that SoCal's defective notice of intention to terminate services because of an arrearage in the master account had anything to do with the damage plaintiffs suffered as a result of SoCal's termination of services for reasons other than the arrearage. Under *Smith* v. *Buttner* (1891) 90 Cal. 95, 99 [27 P. 29], a general allegation of causation in this situation is insufficient. Although the rule of *Smith* was expressly limited in *Goldstein* v. *Healey* (1921) 187 Cal. 206, 212 [201 P. 462], to apply only to a case pleaded in such manner as to involve equal possibility of liability and nonliability, this is such a case.

We do not question that the Legislature was concerned about the plight of people, often of severely limited financial resources, who receive utility

services through a master account when the landlord, as the master customer, fails to make payments to the utility company. In fact, Assembly Bill No. 3404 was originally sponsored by California Rural Legal Assistance and was apparently drafted along the lines of those outlined in a settlement between Pacific Gas & Electric Company and 300 agricultural tenants in El Centro who were left without utility services when their landlord failed to pay the bill. The legislative response was a remedial one, addressed to a specific and identified harm—termination of utility services vital to the actual users of those services who, absent the legislation, had no ability to compel or to substitute payments nor, realistically, any means of obtaining utility services in their own right.

Despite this laudable purpose, however, we cannot impose tort liability upon a public utility company for failure to give the notice required by section 777, whether such failure is in providing a defective notice or in giving no notice whatsoever, unless this breach of the utility company's statutory duty causes the damage sustained by the users whose utility services are terminated. When the public utility company does not initiate the termination, even if it would have terminated service had a delinquent account gone unpaid, but acts only at the direction of its master customer, absent something to suggest a collusive agreement between the public utility company and the master customer to circumvent the statutory notice requirements, any deficiency in the notice provided by the public utility company cannot be the cause of the user's damages, and the company is not liable in tort. The user's remedy is against the individual or entity directing the termination, a remedy plaintiffs have invoked.

We can reach no other conclusion without construing section 777 far beyond the legislative intent we can discern from the legislative history to which we have referred. Plaintiffs have suggested that once a public utility company has given any notice of its intent to terminate utility services delivered under a master account for nonpayment by the master customer, the requirements of section 777 must be fulfilled despite the intervention of, for example, direction to terminate utility services by the master customer as occurred in this case. However, to so construe section 777 would mean that once a public utility company has given notice to such actual users of utility services that it intends to terminate for nonpayment, either (1) the master customer would forfeit his or her right to direct termination of services, thus remaining liable for payment of further charges incurred until the requirements of section 777 are met, or (2) the public utility company would have to continue to provide services to the actual users despite an intervening direction to terminate from the master customer, correspondingly terminating the master customer's financial responsibility on the account. In this latter case, the public utility company would be compelled to

provide utility services during the statutory time period with, quite possibly, no customer of record to look to for payment. While either of these results might further the underlying legislative purpose which we have discussed, neither can properly be implemented by judicial construction of the statute. If the Legislature believes the problem presented by this case needs such a remedy, it must enact one.

■ The only remaining question for decision is whether the trial court abused its discretion in sustaining SoCal's demurrer without leave to amend. As the Supreme Court explained in *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]: "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (See also *Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64].)

We are also guided by the comment of the court in *Hills Trans. Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 709 [72 Cal.Rptr. 441]: "The basic principle governing the privilege of amendment is clear enough: amending of the pleading should be allowed if it appears likely the pleader has, and can state, a recognizable legal claim; amendment should be denied if it appears the pleader has only a moral claim or disappointed expectation, and cannot validly state a justiciable cause of action. But in application we find more of art than of science. How does a court, confronted with a defective pleading of nondescript appearance and uncertain ancestry, determine whether the pleading is susceptible of future domestication into the recognizable flock of justiciable causes of action? In final analysis, the court is required to look at the existing pleading and hazard its best judgment whether behind the words of the pleading anything of legal substance lies, whether on further revision the pleading can honestly state a cause of action. In this exercise it is logical to suppose that the more information a court has the more rational will be its judgment, that hence access to prior pleadings may help the court reach a more intelligent decision, just as access to the history of any particular problem may aid its solution."

■ Although plaintiffs here were not allowed an opportunity to amend their complaint to state a cause of action, they did not seek leave from the trial court to do so. Nor have they suggested to this court that they could amend to add facts necessary to support an inference that the defective notice provided by SoCal on November 14 was causally related to the

damages suffered by plaintiffs when their utilities were terminated on November 15. We can only conclude from the record before us that plaintiffs could make no such allegations. Plaintiffs' initial complaint was verified, and the fundamental allegations remain unchanged, i.e., while SoCal may have been the instrumentality by which plaintiffs' utility services were terminated, the cause of that termination was the direction by SoCal's master customer, whether Simon Younger or others named in the complaint with him, to terminate those services.

Under these circumstances, we conclude that the trial court did not abuse its discretion in sustaining SoCal's demurrer without leave to amend.

The judgment is affirmed. Each party will bear his, her or its costs on appeal.

Stone (W. A.), J., concurred.

**BROWN (G. A.), J.**\*—I respectfully dissent.

It appears to me that the lead opinion overlooks the elemental but fundamental principle that in passing upon a general demurrer to the complaint on the ground that the complaint does not state a cause of action the court must take the material allegations of the complaint at face value, assume they are true and resolve any doubt or ambiguity that may exist in the pleading in favor of the plaintiffs. A demurrer raises only issues of law, issues of fact properly pleaded being admitted by the demurrer, however improbable they may be. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 895, 902, pp. 334, 342.)

It is undisputed that the master account was delinquent on November 14 when Southern California Edison Company (SoCal) gave its four-day notice of termination, that on that date SoCal had the duty to give the ten-day notice required by Public Utilities Code section 777 and that by failing to give the section 777 notice at that time SoCal breached the duty. The fifth cause of action of the complaint against SoCal alone thereupon alleges: "As a direct and proximate result of defendant, Southern California Edison Company's failure to comply with Public Utilities Code section 777 and in violation of defendant Southern California's statutory duty, plaintiffs suffered actual damages in an amount according to proof.

"As a direct and proximate result of defendant Southern California Edison's actions, plaintiffs individually have suffered general damages in an amount according to proof."

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

It appears to me that these allegations are sufficient to state a cause of action against SoCal.

The lead opinion, however, points to allegations in the fourth cause of action and concludes that the only reasonable interpretation of the pleading is that the master landlord, not SoCal, terminated the service and therefore the failure of SoCal to give the notice was not the proximate cause of any damage plaintiffs may have suffered.

It is to be noted that the allegations of the fourth cause of action are incorporated by reference into the fifth cause of action and therefore the allegations of the fourth and fifth causes of action should be read together as if all were stated in sequence in the fifth cause of action.

The lead opinion asserts that the facts as alleged in the fourth cause of action are inconsistent with those alleged in the fifth cause of action and then proceeds to select those in the fourth cause of action rather than the fifth cause of action to believe, observing that the plaintiffs cannot allege contradictory or antagonistic facts in two separate causes of action. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 328 [253 P.2d 659].) Assuming the facts between the two causes of action are inconsistent, the reasons for selecting those alleged in the fourth over those in the fifth do not readily appear.

However, I fail to see the inconsistency. Referring to the precise allegations in the fourth cause of action (see lead opinion, *ante,* at p. 612), all of the allegations through the sentence, "[p]laintiffs' electricity service was turned on again on or about November 7, 1985" have nothing to do with SoCal. Up to that point, the allegations are that defendant landlords turned the electricity and gas off on November 7 and turned it back on on November 7 and that the defendant landlords turned the water off on November 15. (SoCal does not supply the water.) The two last sentences allege: ". . . On or about November 15, 1985, the above named defendants, *with the assistance of the Southern California Edison Company,* did willfully and maliciously, cause the re-termination and interruption of plaintiffs' electricity service. All plaintiffs were without utility service as a result of these actions until they individually vacated the premises." (Italics added.)

There is nothing factually inconsistent between these allegations and those in the fifth cause of action which, in substance, state that SoCal turned off the electricity on November 15 [as is also alleged in the fourth cause of action] without giving the required 10-day notice.

The only conflict between the two paragraphs is in the statement of causation. Proximate causation is in part a question of fact and it is settled

that at the pleading stage, having stated the facts, a pleader may state that several different defendants proximately caused plaintiffs' damages and leave it to the evidence to establish whether some or all of the defendants proximately caused the damages. (*Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 103 [114 P.2d 1]; *Osborn* v. *Wittier* (1951) 103 Cal.App.2d 609, 616 [230 P.2d 132]; see *Summers* v. *Tice* (1948) 33 Cal.2d 80, 84 et seq. [199 P.2d 1, 5 A.L.R. 2d 91].) It is not up to the trial court or this court on general demurrer to pick and choose which one or ones of the defendants caused a termination of the electrical and gas service. Indeed, when the proofs are in it may turn out that both SoCal and the landlord caused the termination.

On general demurrer, the allegations of the complaint are to be construed liberally in favor of the pleader in order to do justice between the parties. (Code Civ. Proc., § 452; *Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305].)

From reading the allegations of the complaint and listening to the arguments, it is apparent that there is considerable confusion as to what the precise factual situation is and whether one or more of the defendants caused the utilities to be turned off. It is my judgment that it is more likely that we would reach a just result in this case if we leave the determination of these unresolved issues for resolution by either a motion for summary judgment or trial.

I would reverse the judgment of dismissal based on the order of the trial court sustaining the general demurrer without leave to amend.