[No. G007804. Fourth Dist., Div. Three. Apr. 24, 1990.]

KRAFT, INC., Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts IV and V.

COUNSEL

Robert J. Foley and William R. Foley for Plaintiff and Appellant.

Adrain Kuyper, County Counsel, and David R. Chaffee, Deputy County Counsel, for Defendant and Respondent.

### OPINION

**SONENSHINE, J.**—In this case, we decide whether a California Constitution, article XIII A change of ownership of corporate real property is triggered by a corporate reorganization and merger when the shareholders of the acquired corporation become majority shareholders in the new parent corporation.

#### I.

In 1980, Kraft, Inc. (Kraft), and Dart Industries, Inc. (Dart), formed a new corporation, Dart & Kraft, Inc. (DKI). DKI set up two wholly owned subsidiary corporations which were then merged into Kraft and Dart. As a result, DKI owned Kraft and Dart and all of their assets but Kraft and Dart each continued to operate as separate subsidiaries.

As part of the transaction, the Kraft and Dart shareholders converted their respective shares of stock into shares of DKI stock. The former Kraft shareholders became owners of 51.5 percent of DKI stock; the former Dart shareholders received the other 48.5 percent. The DKI board of directors consisted of 13 Kraft nominees and 10 Dart nominees.

The County of Orange reassessed the Kraft properties located in the City of Buena Park. (Rev. & Tax. Code, § 64, subd. (c); Cal. Const., art. XIII A.)[2] Kraft paid the taxes but appealed. After exhaustion of its administrative remedies, Kraft filed suit against the County of Orange and the City of Buena Park for a refund.

Kraft, as well as the county and city acting together as joint defendants, filed summary judgment motions. The defendants prevailed and this appeal followed.

#### II.

■ Once again, this court is asked to address section 64 which the Legislature enacted in order to define "change in ownership" as used in article XIII A, commonly known as Proposition 13. Our focus here is whether subdivision (c) requires reassessment of the Kraft properties.

---

[2] All further statutory references are to the Revenue and Taxation Code unless otherwise noted. Article XIII A is always a reference to that provision of the California Constitution.

Section 64, subdivision (a)[3] provides, with certain exceptions set forth, the purchase or transfer of corporate stock is not to be deemed a transfer of the corporation's property. Thus, the everyday transfer of stock shares does not result in a Proposition 13 reassessment of a corporation's property. Subdivision (c) of section 64 is one exception to the general rule. It provides that if the transfer of stock shares results in a change of corporate control, a change of ownership of the corporation's property is deemed to have occurred.

## III.

### APPLICATION OF SECTION 64, SUBDIVISION (C)

Kraft contends no change in corporate control occurred. The Kraft shareholders became the majority shareholders of DKI and, therefore, indirectly continued to control Kraft.

The plain language of section 64, subdivision (c) provides, in essence, that if one corporation either directly or indirectly obtains control over another by the transfer or purchase of stock, a change in ownership of real property occurs. Kraft asks us to ignore this, arguing the merger represents only a change in the *form* of ownership. Kraft maintains we should look through DKI to the shareholders who still control Kraft.

The scope of section 64, subdivision (c) was recently considered in *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84 [255 Cal.Rptr. 670, 767 P.2d 1148].[4] Justice Mosk, writing for a unanimous Supreme

---

[3] Section 64 provides in pertinent part: "(a) Except as provided in . . . subdivisions (c) and (d) of this section, the purchase or transfer of ownership interests in legal entities, such as corporate stock or partnership interests, shall not be deemed to constitute a transfer of the real property of the legal entity. . . .

"(c) When a corporation, partnership, other legal entity or any other person obtains control, as defined in Section 25105, in any corporation, or obtains a majority ownership interest in any partnership or other legal entity through the purchase or transfer of corporate stock, partnership interest, or ownership interests in other legal entities, such purchase or transfer of such stock or other interest shall be a change of ownership of property owned by the corporation, partnership, or other legal entity in which the controlling interest is obtained."

Section 25105 provides as follows: "Direct or indirect ownership or control of more than 50 percent of the voting stock of the taxpayer shall constitute ownership or control for the purposes of this article."

[4] Section 64 was also addressed in *Pueblos Del Rio South* v. *City of San Diego* (1989) 209 Cal.App.3d 893 [257 Cal.Rptr. 578]. The *Pueblos* court was concerned with the application of subdivision (b) and whether it requires corporate affiliation after a reorganization as well as before. Since the *Pueblos* court's focus on section 64 is different from ours, we do not discuss *Pueblos* any further than to note it lends general support to our position. As the court stated, "What is treated as a change of ownership is the situation where any corporation, partnership, other legal entity or any person obtains direct or indirect ownership of more

Court, considered whether section 64, subdivision (c) applies when a corporation purchases all the stock of another, but the real property allegedly subject to reassessment is owned by a wholly owned subsidiary of the acquired corporation. Looking to the language of the section, the court found "[t]he fundamental requirement for a change in ownership under the section is the obtaining of *control* of the corporation that owns the property subject to reassessment, whether that control is obtained directly or indirectly." (*Id.,* at p. 92.)

Kraft argues *Title Ins. & Trust Co.* is distinguishable because Kraft shareholders became the majority shareholders of DKI. Kraft misses the point. The same shareholders did maintain control, but a *new* corporation obtained *direct* control. Kraft overlooks the statute's language which provides for reassessment when a new entity obtains control whether *directly or indirectly.*

In *Sav-on Drugs, Inc.* v. *County of Orange* (1987) 190 Cal.App.3d 1611 [236 Cal.Rptr. 100], this court decided a corporate merger did constitute a change of ownership. The question in *Sav-on* was whether subdivision (b) or (c) of section 64 applied to the transaction involved. A wholly owned subsidiary of Sav-on owned property allegedly subject to reassessment after Sav-on merged into a subsidiary of Jewel Companies, Inc. The Sav-on shareholders converted their shares into shares of Jewel stock. As a result, the former owners of Sav-on remained corporate shareholders, but only as to a minority interest in Jewel.

Kraft argues *Sav-on* compels the conclusion that no change of ownership occurred because the Kraft shareholders obtained *majority* control of DKI. Kraft has interpreted *Sav-on* too strictly and has ignored its reasoning. In *Sav-on,* we did note the Sav-on shareholders became minority shareholders and did not control the merged corporation and its wholly owned subsidiary. (*Sav-on Drugs, Inc.* v. *County of Orange, supra*, 190 Cal.App.3d at p. 1618.) Yet, we found section 64, subdivision (c) applicable because *control* of the titleholder passed from the acquired corporation to Jewel and its subsidiary. The merger thus fell directly within section 64, subdivision (c). (*Id.,* at p. 1622.) We did not mention again that the Sav-on shareholders lost their majority control, indicating ultimate shareholder control was not the deciding factor. Instead, we quoted the State Board of Equalization rule promulgated to cover the point: "Rule 462(j)(4)(A) states a change in ownership occurs '[w]hen any corporation, partnership, other legal entity or any person: . . . (iii) obtains direct or indirect ownership or control of more

than 50 percent of the voting stock in a corporation, the total interest in both capital and profits of a partnership, or the total interest in any other legal entity. (§ 64(c).)" (*Id.*, at p. 906.)

than 50 percent of the total ownership interest in any other legal entity . . . [¶] all of the property owned directly or indirectly by the acquired legal entity is deemed to have undergone a change in ownership.' (Cal. Admin. Code, tit. 18, § 462.)" *(Ibid.)*

To accept Kraft's contentions would be to defeat the Legislature's express purposes. Proposition 13 directed reassessment of property upon a "change in ownership," but did not define that phrase. It is the Legislature which must interpret the electorate's intent. Section 64, subdivision (c) was enacted as an exception to the general rule of subdivision (a) in order to equalize the tax burden between individual and corporate purchasers of real property. *(Title Ins. & Trust Co.* v. *County of Riverside, supra*, 48 Cal.3d at p. 95.) Thus, when transfers of stock shares result in a change in control of a corporation, it is considered a change of ownership of corporate property.

■ "When a constitutional provision has a doubtful or obscure meaning, there is a strong presumption in favor of the Legislature's interpretation of the provision. [Citations.]" *(Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 488 [229 Cal.Rptr. 324, 723 P.2d 64].) "If the statute is clear, the 'plain meaning' rule applies; the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. [Citation.]" *(Pueblos Del Rio South* v. *City of San Diego, supra*, 209 Cal.App.3d at p. 904.) Subdivision (c) of section 64 has been held to be "a perfectly reasonable interpretation of article XIII A." *(Sav-on Drugs, Inc.* v. *County of Orange, supra*, 190 Cal.App.3d at p. 1622.)

■ Kraft contends the "ultimate control" theory requires looking through the corporate form to determine which shareholders hold the essential element of control. Under the "ultimate control" theory, a change in property ownership occurs if a single shareholder gains majority control of a corporation through purchase of shares. Kraft argues *ultimate control* is not vested in DKI because it is the former Kraft shareholders who ultimately control the property owned by Kraft.

Subdivision (a) of section 64 reflects the " 'separate entity' theory, i.e., the notion found in our general law that corporations, partnerships, joint ventures, and associations have an identity apart from that of the owners." *(Sav-on Drugs, Inc.* v. *County of Orange, supra*, 190 Cal.App.3d at p. 1620.) Thus, the general rule is that the transfer of corporate stock is not deemed a transfer of the real property of a legal entity because the separate legal entity still owns the property. Section 64, subdivision (c), as an exception to that general rule, reflects the "ultimate control" theory, which looks through the title holder to the entity ultimately responsible. *(Title Ins. & Trust Co.* v. *County of Riverside, supra*, 48 Cal.3d at pp. 89-90, fn. 3.) The

ultimate control theory, however, does not require, as Kraft contends, that we are to ignore all intermediary entities and look only to the shareholders of the parent company which indirectly controls the title-holding subsidiary corporation. The former Kraft shareholders are now merely individual shareholders in DKI; and DKI is the controlling entity.

"Section 64(c) specifies two means by which a change of ownership may occur. The first is if one corporation, by purchasing stock, obtains direct control of another which owns the property allegedly subject to reassessment." (*Title Ins. & Trust Co.* v. *County of Riverside, supra*, 48 Cal.3d at p. 92.) This occurred when DKI acquired the stock of Kraft. The wording of section 64, subdivision (c) clearly applies to Kraft.[5]

IV., V.*

Judgment affirmed. Respondents to receive costs.

Wallin, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 1990. Lucas, C. J., was of the opinion that the petition should be granted.

---

[5] Because we hold section 64, subdivision (c) applies, we do not reach respondents' contention section 61, subdivision (i) can be applied in the alternative to trigger reassessment of Kraft properties.

* See footnote 1, *ante,* page 1104.