[No. A059652. First Dist., Div. Three. Sept. 28, 1993.]

J. C. DALTON et al., Plaintiffs and Appellants, v.
EAST BAY MUNICIPAL UTILITY DISTRICT et al., Defendants and
Respondents.

COUNSEL

Fitzgerald, Abbott & Beardlsey, Richard T. White, Stephen M. Judson, Beth E. Aspedon and Christopher E. Reggie for Plaintiffs and Appellants.

Orrick, Herrington & Sutcliffe, Anne G. Bookin, Eilleen M. Clavere and Nancie Ryan for Defendants and Respondents.

OPINION

WHITE, P. J.—In this case we consider whether former employees of East Bay Municipal Utility District (EBMUD) who are participants in EBMUD Employees' Retirement System (Retirement System) may file an action for breach of fiduciary duty and denial of equal protection against EBMUD, the Retirement System and EBMUD Retirement Board (Retirement Board) without first filing a claim pursuant to the California Torts Claim Act. We conclude the presentation of a written claim against defendants is a prerequisite to maintaining this action.

### THE PLEADINGS

Plaintiffs' complaint alleges their class consists of over 800 former and retired employees of defendant EBMUD who retired prior to July 1, 1989,

and who are participants in the "1955 Formula" of defendant Retirement System. The 1955 Formula required substantial payroll contributions from the employees and matching contributions from EBMUD but offered high benefits upon retirement.[1]

In 1980, EBMUD started a second-tier retirement formula for new employees known as the "1980 Formula." Employee contributions under the 1980 Formula were about two-thirds less than the 1955 Formula, but the 1980 Formula offered lower retirement benefits.[2] During a window period in 1980, the 1955 Formula participants were allowed to switch to the 1980 Formula. However, only about 20 percent of the 1955 Formula participants did so.

Although two different benefit formulas were in place, there was only one retirement plan and only one fund into which all contributions were paid and from which all benefit payments were made.

In a June 17, 1988, letter to EBMUD, an actuary retained by EBMUD stated that a study of the Retirement System for the period July 1, 1983, through June 30, 1987, found that 1980 Formula Members, who contribute to the Retirement System at a rate of 3.5 percent of pay, were underpaying their share by 1 percent. The actuary also stated that 1955 Formula members appeared to be "overcontributing to the System."

In an October 1988 report, the same actuary stated that the payroll contribution rates for the 1955 Formula participants were based upon 1973 actuarial assumptions and were too high under actuarial assumptions adopted by the Retirement System in 1988. The actuary recommended revising contribution rates for 1955 Formula participants from the range of 8.37 to 10.45 percent to a range of 6.16 to 8.64 percent. The same report stated that payroll contributions by 1980 Formula participants were inadequate. The average contribution by EBMUD for the 1980 Formula participants was 5.6 percent, which exceeded the 3.5 percent contribution rate of the 1980 Formula participants. On the other hand, EBMUD made matching contributions for the 1955 Formula participants. In an October 1989 letter to EBMUD, the same actuary reported that the Retirement System's funding ratio (assets divided by accrued benefits) was approximately 120 percent, compared to a range of 80 to 90 percent for other public plans.

In December 1989, the EBMUD directors adopted amendments to both the 1955 and 1980 Formulas. The amendments retroactively increased the

---

[1] The 1955 Formula members contributed 8.5 to 10.5 percent of their gross pay and were promised approximately 2.42 percent of salary at retirement multiplied by years of service.

[2] The 1980 Formula members contributed 3.5 percent of their pay and were promised 2.0 percent of salary at retirement multiplied by years of service.

benefit formula for 1980 participants from 2.0 to 2.2 percent of terminal compensation for each year of Retirement System participation. The participant contribution rate remains 3.5 percent of gross pay, and the 1980 Formula participants are not required to pay an additional contribution in consideration of their increased benefits for past service. The amendments also prospectively reduce the contribution rate for 1955 Formula participants to 6 percent of gross pay. Consequently, the 1955 Formula participants did not receive any refund of contributions which they made at higher rates in past years.

Based on these general allegations plaintiffs' complaint alleges the Retirement Board, the board members, the directors and the Retirement System breached its fiduciary duty by improperly favoring 1980 Formula participants over 1955 Formula participants. As a result, 1980 Formula participants receive increased benefits funded in part by contributions made by 1955 Formula participants. The second cause of action alleges defendants denied plaintiffs equal protection under the law in violation of California Constitution, article I, section 7. The complaint prays for an award of money or benefits among other things.

Defendants' demurrer asserts plaintiffs' failure to file a claim under the California Tort Claims Act bars their claims, plaintiffs cannot state a cause of action for breach of fiduciary duty because defendants are fulfilling all of their obligations to them, and the 1989 amendments did not violate plaintiffs' rights to equal protection. Without stating specific grounds, the trial court sustained defendants' demurrer without leave to amend and dismissed the complaint. This appeal followed.

## DISCUSSION

■ When reviewing an order sustaining a demurrer without leave to amend, this court must treat the demurrer as admitting all properly pleaded facts, but not contentions, deductions or conclusions of fact or law. We must read the complaint as a whole and give it a reasonable interpretation. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) ■ If the complaint, liberally construed, can state a cause of action, or if it is reasonably possible that the plaintiffs can cure the complaint by amendment, the trial court should not sustain a demurrer without leave to amend. (*Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64].) The burden is on the plaintiffs to establish the reasonable possibility that the defect is curable. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) A demurrer is properly sustained without leave to amend if it appears that under applicable substantive law there is no reasonable possibility that

an amendment could remedy the defects. (*Heckendorn* v. *City of San Marino, supra*, 42 Cal.3d at p. 486.)

 As a general rule, California law requires that all claims for money or damages against a local public entity must first be filed with the entity as a "condition precedent to the maintenance of the action." (Gov. Code,[3] §§ 905, 945.4; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) It is undisputed plaintiffs did not file a claim with EBMUD. In both their complaint and on appeal plaintiffs assert they were exempt from filing such claim pursuant to section 905, subdivision (f).

In determining whether section 905, subdivision (f) provides plaintiffs with an exemption from complying with the general claims statutes, we are guided by established rules of statutory construction. " 'We begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] In determining such intent "[t]he court turns first to the words themselves for the answer." [Citation.] We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.] "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose[,]" [citation]; "a construction making some words surplusage is to be avoided." [Citation.] "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' " (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155]; see also *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].)

 Section 905 provides in pertinent part: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against local public entities except:

" . . . . . . . . . . . . . . . . . . . . . .

"(f) Applications or claims for money or benefits under any public retirement or pension system."

---

[3] All further statutory references are to the Government Code unless otherwise indicated.

At first blush plaintiffs' claims appear to fall squarely within the subdivision (f) exception; that is, they are claims "for money or benefits under [a] public retirement or pension system." Defendants' cited authorities do not alter this view.

In *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670 [138 Cal.Rptr. 338], a public employee claimed supplemental disability benefits from her employee retirement plan. As it turned out, a booklet describing benefits available under the employees retirement plan misrepresented the amount of supplemental disability benefits under the plan. The Court of Appeal found the plaintiff's action did not fall under the section 905, subdivision (f), since the retirement plan never contained the provisions set forth in the booklet. (*Id.* at p. 681.)

In *Hanson* v. *Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942 [181 Cal.Rptr. 378], a former school employee was laid off when his position was eliminated by budget reductions. When a similar job was advertised by the employer, the plaintiff claimed he was entitled to priority in reemployment pursuant to Education Code former section 13737. The employer advised the employee that the new position encompassed greater duties than the former job and, accordingly, the employee was not entitled to priority. More than two years later, the employee filed suit against the employer for failure to reemploy him and claimed damages including salary and benefits he would have earned had be been reemployed when requested. The trial court found a portion of the employee's case was barred by his failure to comply with section 911.2.[4]

On appeal the employee asserted he was exempt from filing a governmental tort claim, since part of his damage action was for lost salary and pension. He maintained these claims fell within the exceptions of section 905, subdivisions (c) and (f). The Court of Appeal disagreed. "In spite of Hanson's assertion his claim should be construed as if it were for breach of contract to recover wages and benefits unlawfully withheld, the plain fact is he is suing in tort to recover damages for being denied reemployment. The issues are not limited to whether District, having already received the benefits of an employee's service, is now dealing fairly with him in withholding compensation earned. Rather, the issues here are whether Hanson, *not having performed any services*, is entitled to be compensated (he is not

---

[4]Section 911.2 provides: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action."

asking for reinstatement) because of District's alleged tortious conduct." (*Hanson* v. *Garden Grove Unified School Dist., supra,* 129 Cal.App.3d at p. 947, italics in original.)

In *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 [195 Cal.Rptr. 576], the plaintiff sued his former employer for wrongful termination two years after his dismissal. The employer's demurrer on the grounds the plaintiff failed to comply with the filing provision of California Tort Claims Act was sustained. Relying on *Baillargeon* and *Hanson,* the Court of Appeal found the exemption specified in section 905, subdivision (f) was limited to benefits earned during the course of employment. (*Loehr, supra,* 147 Cal.App.3d at p. 1080.) A similar holding was made in *Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 32 [234 Cal.Rptr. 612].)

Clearly, *Baillargeon, Hanson, Loehr* and *Dilts* are inapposite to the case at bench. Plaintiffs are claiming money under a pension system for work which has already been performed. Thus, they appear to fall within the section 905, subdivision (f) exception. However, this conclusion does not end our analysis.

■ As the court explained in *Dilts* v. *Cantua Elementary School Dist., supra,* 189 Cal.App.3d at page 32: "The primary function of the Tort Claims Act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate avoid litigation by settling meritorious claims. [Citation.]" ■ Thus, the statutory exceptions specified in section 905 are given a strict construction. (Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 6.24, p. 664.)

The legislative history of section 905 indicates the scope of the enumerated exceptions to filing claims was intended to be extremely limited. The study upon which legislation on the filing of claims against public entities was based provides: "In most of [the subdivisions to section 905] the basic objectives of early investigation to prevent litigation and discourage false claims which support a uniform procedure for tort and inverse condemnation claims are not applicable; and orderly administration of the substantive policies governing the enumerated types of claims strongly suggests that claims procedure should be closely and directly integrated into such substantive policies. Obvious and compelling reasons appear for . . . providing an uncomplicated routine procedure for processing the tremendous volume of salary, [and] pension . . . claims; . . ." (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-117.)

Consequently, commentators have construed the section 905 exceptions as essentially nontortious claims "for which some other adequate claims procedure has already been devised or for which the procedural protection of the Tort Claims Act is believed to be unnecessary." (Cal. Government Tort Liability Practice, *op. cit. supra*, pp. 651-652.)

The instant action is not such a case. Plaintiffs are basically alleging tortious wrongdoing by defendants. They do not seek money due to them under the terms of the existing pension system; rather, they claim defendants treated them unfairly in administrating the system and seek to change the 1989 administrative decisions. Consequently, we conclude plaintiffs were required to file a claim pursuant to section 905. Having failed to file their claim, plaintiffs' suit is barred by section 911.2.

DISPOSITION

The judgment is affirmed.

Merrill, J., and Werdegar, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 16, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.