[Civ. No. 12973. Third Dist. Jan. 21, 1972.]

FRED A. SHAEFFER, JR., et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

1018

## COUNSEL

Watt & Leverenz and Reginald M. Watt for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Lloyd Hinkelman and Hubert O. Bower, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**JANES, J.**—Plaintiffs appeal, after nonjury trial, from an adverse judgment in this inverse condemnation action. Their complaint seeks compensation for damages for harm allegedly caused to their properties as the result of a flood which occurred on December 23, 1964, along the Feather River, in Yuba County.

The trial court held that plaintiffs had sustained no damage attributable to the public improvement hereinafter discussed. Plaintiffs attack that decision, claiming that defendant State of California was legally responsible for harm to their properties resulting from waters of the Feather River being diverted from natural westerly drainage by a levee maintained and controlled by the state as a part of the Sacramento River Flood Control Project.

Plaintiffs, Fred A. Shaeffer, Jr., Caroline Mathews, J. O. Sullivan, Janet Sullivan, George Prindiville, Katherine Prindiville, Charles Mathews, Edward Mathews, Albert J. Arostegui and Margaret S. Arostegui, are the respective owners of certain parcels of land lying on the eastern side of the Feather River in Yuba County downstream from Oroville Dam. Plaintiffs J. O. Sullivan, Janet Sullivan, Caroline Mathews, George D. Prindiville and Katherine Prindiville held an option to purchase the property known as the P. M. Ranch which is similarly situated.

The levee system (primarily on the western side of the Feather River) is a part of the Sacramento River Flood Control Project which operates jointly for flood control purposes with the Oroville Reservoir Project. When the Feather River flooded in 1964, plaintiffs' lands[1] were covered with water. Oroville Dam was partially completed at the time of this flood and was effective to some extent since the evidence showed that the peak inflow into the dam was 253,000 cubic feet per second, while the peak flow downstream was reduced to 158,000, c.f.s. The evidence further showed that absent the entire project (i.e., both the dam and the levee system), the average depth of water intruding on plaintiffs' property would have been greater than that which occurred. Similarly, the velocity range of that flow would also have been greater.

On the basis of this evidence, which showed that the net result of the total project was a lesser amount of flooding than that which would have occurred in the absence of the improvement, the court concluded that there was no liability for inverse condemnation.

---

[1]Reference to plaintiffs' lands will include the property known as the P. M. Ranch.

Plaintiffs contend that the court applied an improper standard in making its determination that no compensable damage occurred, in that it effectively deprived plaintiffs of the benefits of the Oroville Dam. They claim that such deprivation constitutes unequal protection of the law (*Beveridge* v. *Lewis* (1902) 137 Cal. 619, 625 [67 P. 1040, 70 P. 1083]; *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 296 [74 Cal.Rptr. 521, 449 P.2d 737]), and further, that it represents an improper use of general benefits as an offset against damages in that "It has long been the rule in California that severance damages are not to be diminished by *general* benefits resulting from a given public improvement." (*Pierpont Inn, Inc.* v. *State of California, supra,* 70 Cal.2d at p. 296; *Dunbar* v. *Humboldt Bay Mun. Wat. Dist.* (1967) 254 Cal.App.2d 480, 489 [62 Cal.Rptr. 358].)

Plaintiffs introduced evidence showing that the flooding of the properties which occurred was greater than that which would have occurred had the dam, but not the west levee, been present. They argue that those landowners whose properties would have been flooded absent the dam, but were completely protected because of the dam, are allowed to retain the benefits of the dam while plaintiffs (and others similarly situated) must in effect surrender that benefit to the state as an offset to damages proximately caused by the levee. This, they argue, represents unequal protection and an improper application of a general benefit, common to all owners previously (and presently) subject to flooding of the Feather River.

■ The protective action which may be taken by an individual landowner, without incurring liability, may similarly be taken by the state for the protection of all landowners in a flood area without imposing liability upon the state under article I, section 14 of the California Constitution. (*Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19, 24 [119 P.2d 1]; *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 636-637 [220 P.2d 897].) If such flood control improvements do not subject a landowner's property to any additional flooding than would have occurred absent the work or improvement, the state incurs no liability for the acts complained of. (See, *Clement* v. *State Reclamation Board, supra,* 35 Cal.2d at p. 637; *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629, 647-648 [42 Cal.Rptr. 34]; *Stone* v. *L. A. County Flood Control Dist.* (1947) 81 Cal.App.2d 902, 908 [185 P.2d 396]; *Janssen* v. *County of Los Angeles* (1942) 50 Cal.App.2d 45, 55, 56-57 [123 P.2d 122]; see also, *United States* v. *Sponenbarger* (1939) 308 U.S. 256, 265-266 [84 L.Ed. 230, 237-238, 60 S.Ct. 225].)

■ It follows that a public entity is not liable for damages merely because its flood control improvements do not provide the same degree of protection to all property owners in the area. This concept recognizes that some protection from floods is better than none at all. The rule is subject, however, to an exception arising from the fact that courts, "[m]indful of the enormous damage-producing potential of defective public flood control projects, . . . have insisted that public agencies must act reasonably in the development of construction and operational plans so as to avoid unnecessary damage to private property. Reasonableness, in this context, is not entirely a matter of negligence, but represents a balancing of public need against the gravity of private harm." (Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J. 431, 455; see *House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 391-392 [153 P.2d 950]; *The Weinberg Co.* v. *Bixby* (1921) 185 Cal. 87, 103 [196 P. 25] [reasonableness]; *Beckley* v. *Reclamation Board* (1962) 205 Cal.App.2d 734 [23 Cal.Rptr. 428].) ■ No showing was made at trial that the state had acted unreasonably or that plaintiffs have suffered grave harm as the result of the project. On the contrary, they have benefited.[2]

Plaintiffs lift from context the following quotation from *Pierpont Inn, Inc.* v. *State of California, supra,* 70 Cal.2d at page 296; " 'If he [the landowner] is compelled to contribute all that he could possibly gain by the improvement, while others in all respects similarly affected by it are not required to do so, he does not receive the equal protection of the law.' " The quotation has no relevance to the facts and proposition advanced by plaintiffs in the case at bench. What plaintiffs are really suggesting is that other properties receive more benefit than those of plaintiffs because of the phase and stages of the flood control project which we have described. That situation is a possible result of every public project of this nature, is not a denial of equal protection of the law and, as the trial court held, does not provide plaintiffs with a cause of action against the state.

In view of the disposition to be made of plaintiffs' first contention, we need not discuss the remaining issue raised by this case, to wit: Whether the holder of a never exercised option to purchase real property may maintain an action in inverse condemnation for damages to that realty. Were that question reached, it necessarily would be decided against plaintiff

---

[2]Cf., *Beckley* v. *Reclamation Board, supra,* 205 Cal.App.2d 734 (hg. den.), where the flood control works caused plaintiffs' lands to be thrown into an area on the river side of project levees with an increased flow of water and with no right in plaintiffs to build works to protect their lands, thereby burdening them with an increased servitude.

lessees. (See, *State of California* v. *Whitlow* (1966) 243 Cal.App.2d 490, 495-496 [52 Cal.Rptr. 336]; *East Bay Mun. Utility Dist.* v. *Kieffer* (1929) 99 Cal.App. 240, 246-247 [278 P. 476, 279 P. 178].)

The judgment is affirmed.

Richardson, P. J., and Pierce, J.,* concurred.

A petition for a rehearing was denied February 17, 1972, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1972.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.