[No. C009412. Third Dist. Jan. 31, 1992.]

WILBERT J. YUE et al., Plaintiffs and Appellants, v.
CITY OF AUBURN, Defendant and Respondent.

COUNSEL

Daniel P. Patterson, Curran & Alschuler and Donald W. Curran for Plaintiffs and Appellants.

Stumbos, Mason & Thomas and Douglas W. Brown for Defendant and Respondent.

## OPINION

MARLER, J.—This appeal is taken from an order and judgment of dismissal entered by the trial court after sustaining the general demurrer to plaintiffs' second amended complaint for inverse condemnation without leave to amend. We shall reverse.

### FACTS AND PROCEDURAL HISTORY

On May 23, 1986, Richard Yue, on behalf of RHRH, Inc. (doing business as the Shanghai Restaurant and Bar) filed a claim against the city of Auburn alleging that his restaurant and bar, located in the old city portion of Auburn, was damaged on February 18, 1986, by flooding and excessive water "caused by [a] poorly engineered drainage system." This claim was rejected by the city on June 12, 1986.

On December 3, 1986, plaintiffs filed a complaint in superior court alleging a taking by inverse condemnation and a second cause of action for negligence. After a succession of amendments and demurrers, plaintiffs abandoned their negligence cause of action because of their failure to meet the filing requirements of the Government Tort Claims Act (Gov. Code, § 900 et seq.), and ultimately filed a second amended complaint based solely on inverse condemnation. This complaint sought money damages for loss in

value to plaintiff Wilbert Yue's ownership interest in the real property and for loss in value of RHRH's business and leasehold interest in the property based on several separate incidents of flooding.

The gravamen of the complaint is as follows: A development known as the Skyline Subdivision Project was built above plaintiffs' property. Defendant "planned, approved, designed, . . . constructed, . . . and otherwise substantially participated in activities for the public use or benefit including the exercise of dominion and control over drainage courses which included offsite storm drainage facilities both man-made and natural dedicated for public use as a condition for the development of the upstream Skyline Subdivision Project. . . ." The subdivision is in the Brewery Lane drainage basin and plaintiffs' land is below, in the Old Town area. The construction of the subdivision substantially increased impervious surfaces which in turn substantially increased storm water runoff. The maximum inflow from the Brewery basin culvert is 105 cubic feet per second (cfs) while the capacity of the preexisting drainage structure below is 75 cfs. Defendant failed to require the developer of the subdivision to mitigate the storm water runoff and defendant failed to upgrade its drainage facilities to accommodate the increased flow of water. Defendant's drainage facilities are inadequate to handle the increased storm water runoff and plaintiffs' land has been inundated with water repeatedly as a consequence.

On April 11, 1990, the city demurred to the second amended complaint for failure to state a cause of action. This general demurrer was sustained without leave to amend on May 23, 1990, due to plaintiffs' failure to plead that the city's "flood control project failed to work as intended and that the failure was the result of some unreasonable conduct on the part of the public agency." Thereafter, the judgment dismissing the complaint was entered, from which plaintiffs timely appealed.

## DISCUSSION

### I

■ The standard of review on an appeal from judgment of dismissal following sustaining of a general demurrer is guided by long settled rules. We treat the demurrer as admitting all material facts properly pleaded, as well as those which reasonably arise by implication, but not contentions, deductions or conclusions of fact or law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 114 [137 Cal.Rptr. 797]; *Beason* v. *Griff* (1954) 127 Cal.App.2d 382, 386-387 [274 P.2d 47].) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their

context." (*Blank, supra,* 39 Cal.3d at p. 318.) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action on any theory. (*Ibid.*; *Beason, supra,* 127 Cal.App.2d at pp. 386-387.) Moreover, " 'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.' " (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64], quoting *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].)

## II

The dispute on appeal centers on the requirements for pleading an inverse condemnation cause of action based on water damage. That a dispute exists is understandable as there is considerable confusion in the law regarding the requirements for such a cause of action.[1]

Defendant contends that the trial court was correct in ruling that the second amended complaint is defective because it fails to plead the conjunction of substantial causation and unreasonableness as set forth in *Belair* v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550 [253 Cal.Rptr. 693, 764 P.2d 1070]. Defendant argues we should follow the trial court's lead and apply the specific holding of *Belair* that "when a public flood control improvement *fails to function as intended* and properties historically subject to flooding are damaged as a proximate result thereof, plaintiffs' recovery in inverse condemnation requires proof that the failure was attributable to some unreasonable conduct on the part of the defendant public entities." (*Id.* at p. 567, italics added.)

Plaintiffs, on the other hand, maintain that they have adequately pleaded a cause of action in inverse condemnation under the requirements applicable to the facts of this case.

For reasons which follow, we conclude that *Belair* does not apply to the case at bar and that plaintiffs have stated a cause of action in inverse condemnation.

---

[1]A practitioner's manual warns that "[d]ecisions in water damage cases defy logical synthesis. The practitioner should recognize that each case is decided on its particular factual situation, with little reliance on precedent. The characterization of inverse condemnation decisional law as 'muddled and disorderly' [citation] is particularly descriptive of water cases." (Condemnation Practice in Cal. (Cont.Ed.Bar 1973) Inverse Condemnation, § 13.14, p. 350.)

## III

There are causes of action for inverse condemnation due to water damage which differ according to the type of water involved. (Van Alstyne, *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 448-465; 4 Witkin, Summary of Cal. Law (3d ed. 1985) Real Property, §§ 797-806, pp. 975-983; Condemnation Practice in Cal., *supra*, Inverse Condemnation, §§ 13.13-13.17, pp. 348-354; 5 Miller & Starr, Cal. Real Estate Law 2d (1989) Adjoining Landowners, §§ 14.20-14.23, pp. 343-357; 2 Nichols on Eminent Domain (3d ed. 1990) Taking and Damage, § 6.08[3], pp. 6-50 - 6-51.) The policy considerations and pleading requirements vary considerably with each type. Thus, the determination of whether there is a cause of action in inverse condemnation for water damage begins with the traditional analytical approach of finding what type of water caused the damage.

This categorization process originated in tort cases and is followed in inverse condemnation lawsuits as well. ■ "[I]nverse liability of public agencies is determined in the main by the peculiarities of private law rules governing interference with " 'surface waters,' 'flood waters,' and 'stream waters.' [ ]" (Van Alstyne, *op. cit. supra*, 20 Hastings L.J. at pp. 448-449.) The legal rights and consequences following such categorization of water types have recently been summarized as follows: " ' " 'First, one has no right to obstruct the flow onto his land of what are technically known as *surface waters* . . . . Second, one has the right to protect himself against *flood waters* . . . and for that purpose to obstruct their flow onto his land, and this even though such obstruction causes the water to flow onto the land of another. . . . Third, one may not obstruct or divert the flow of a *natural watercourse*. [Citations.]' " ' " (*Weaver* v. *Bishop* (1988) 206 Cal.App.3d 1351, 1353-1354 [254 Cal.Rptr. 425] [private litigants], italics added.)

In the present case, the complaint permits the inference, appropriate on general demurrer, that the water which inundated plaintiffs' property was *surface water*. The complaint describes increased "impervious surfaces," increased "storm water runoff," "storm waters," and a culvert, built upland from plaintiffs land to collect "runoff." In *Keys* v. *Romley* (1967) 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529], the Supreme Court described surface water as being "[w]ater diffused over the surface of land, or contained in depressions therein, and *resulting from rain*, snow, or which rises to the surface in springs . . . . It is . . . distinguishable from . . . water collected in an identifiable body, such as a river or lake. The extraordinary overflow of rivers and streams is known as 'flood water.' " (*Id.* at p. 400, italics added.)

The facts alleged in the complaint are very similar to those in other inverse condemnation cases involving property damage caused by the diversion or obstruction of surface waters. For example, in *Sheffet* v. *County of*

*Los Angeles* (1970) 3 Cal.App.3d 720 [84 Cal.Rptr. 11] the plaintiff recovered for damages caused by reduction in the natural absorption surface in a new development which created an increased and different pattern of surface flow from the upland tract and concentrated runoff to plaintiff's property. *Burrows* v. *State of California* (1968) 260 Cal.App.2d 29 [66 Cal.Rptr. 868] was a case in which defendant's road resurfacing and widening project eliminated a drainage ditch, thus changing drainage patterns of surface water and causing flooding of plaintiff's land.

*Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345 [28 Cal.Rptr. 357] involved damage caused by an accelerated flow of surface water over newly developed land adjoining plaintiff's property, collected in an enlarged culvert and sent through plaintiff's existing ditch. The court noted the basis of the city's liability was its failure to appreciate the probability that the drainage system from the new development to the Frustuck property, functioning as deliberately conceived, and as altered and maintained by the diversion of waters from their normal channels, would result in some damage to private property. (*Id.* at p. 362.) The drainage system, which the city had accepted and approved, was a public improvement and it did not matter if the city had not been the one that actually physically diverted the water. (*Ibid.*) "The fact that the work is performed by a contractor, subdivider or a private owner of property does not necessarily exonerate a public agency, if such contractor, subdivider or owner follows the plans and specifications furnished or approved by the public agency." (*Id.* at pp. 362-363.)

Finally, in *Inns* v. *San Juan Unified School Dist.* (1963) 222 Cal.App.2d 174 [34 Cal.Rptr. 903] a school altered its property's natural surface drainage pattern through a wide, vegetation-covered swale to direct water through a 28-inch culvert onto plaintiff's property. Although the plaintiff had always been subject to a "servitude" for the water from the school's land, this court held the increase in volume and velocity of water released into the swale created inverse condemnation liability. (*Id.* at p. 177, citing *LeBrun* v. *Richards* (1930) 210 Cal. 308 [291 P. 825, 72 A.L.R. 336].)

■ A cause of action for inverse condemnation based on surface water damage must conform to the general inverse condemnation principles set forth in *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129], and grounded in California's Constitution.[2] (*Sheffet, supra,* 3 Cal.App.3d at pp. 731-732.) In certain circumstances, an owner of private property may recover in an inverse condemnation action where

---

[2]"Private property shall not be taken or damaged for public use without just compensation having first been made to . . . the owner. . . ." (Cal. Const., art. I, former § 14.)

actual physical damage is caused to his property by a public improvement as deliberately planned and built, whether or not the damage is foreseeable. (*Albers, supra,* 62 Cal.2d at pp. 262, 263-264; contra *Belair* v. *Riverside County Flood Control Dist., supra,* 47 Cal.3d at p. 567 [re Flood Waters]; *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 306-307 [90 Cal.Rptr. 345, 475 P.2d 441].) In certain circumstances, a governmental agency may be held strictly liable, with or without fault, if the public improvement constitutes a substantial cause of the damage even if only one of several concurrent causes. (*Souza* v. *Silver Development Co.* (1985) 164 Cal.App.3d 165, 171 [210 Cal.Rptr. 146]; accord, *Belair, supra,* at pp. 559-560.)

■ The complaint alleges that plaintiffs are owners in fee of certain described real property in the Old Town portion of the City of Auburn, and are lessees of a restaurant sited on that property. Thus, the requirement that plaintiffs have a private property ownership interest in the damaged property is satisfied.

The complaint further alleges that "as a direct and proximate result of [city's design and operation] of the improvements . . . and exercise of dominion over man-made and natural watercourses . . . for the management and control of storm waters, plaintiffs' . . . real properties have since development of upstream properties repeatedly been subject to inundation and invasion by storm waters and suffered damage . . . because of the unreasonable activities and conduct of [city]." This satisfies the requirement of alleging damage to plaintiffs' property caused by the project as designed and built.

The complaint alleges that the city "dedicated for public use" the drainage facilities located above plaintiffs' property, thus satisfying the necessity of alleging a public project caused the harm.

Finally, the complaint alleges, albeit somewhat unclearly, that defendant constructed the Brewery basin culvert, with a capacity of 105 cfs, and sent water from the surface runoff of the subdivision through it into a preexisting 75 cfs drainage facility adjacent to plaintiffs' property, and that defendant's "failure to recognize" the existing storm "drainage facilities [were] inadequate" to collect the increased storm water runoff from Skyline Subdivision "proximately and substantially caused" damage to plaintiffs' property. Thus, the *Albers* requirement of pleading substantial causation is satisfied.

■ An inverse condemnation cause of action based on damage by surface water is governed by a rule of reasonableness that is peculiar to that genre. (*Burrows* v. *State of California, supra,* 260 Cal.2d at pp. 32-33.)

*Burrows*, which first applied the reasonableness rule of private surface water law to an inverse condemnation case, succinctly summarized this rule as follows: "1. If the upper owner is reasonable and the lower owner [is] unreasonable, the upper owner wins; 2. [i]f the upper owner is unreasonable and the lower owner [is] reasonable, the lower owner wins; . . . 3. [i]f both the upper and lower owners are reasonable, the lower owner wins." (*Burrows, supra,* at pp. 32-33; accord *Sheffet v. County of Los Angeles, supra,* 3 Cal.App.3d at p. 728.)

However, this reasonableness doctrine simply presents a question of fact to be determined in each case upon a consideration of all the relevant circumstances. (*Keys v. Romley, supra,* 64 Cal.2d at p. 410.) Plaintiffs need not plead defendant's unreasonableness to state a cause of action. (*Burrows, supra,* 260 Cal.App.2d at p. 33.) Instead, defendant must answer and raise the issue of plaintiffs' unreasonableness to prevail in this case. As the *Burrows* court wryly notes, there is no incentive "to try to plead and prove that the upper owner's diversion of surface water has been unreasonable. He prevails, whatever the nature of the upper owner's conduct. Why should he undertake the burden of proving the upper owner's diversion to be unreasonable? The reasonable diverter's money spends just as nicely." (*Ibid.*)[3]

 Inasmuch as the case involves surface waters inundating property that was not subject to historical flooding, defendant's reliance on *Belair v. Riverside County Flood Control Dist., supra,* 47 Cal.3d 550 is misplaced and plaintiffs need not allege defendant's drainage system failed to function as intended. First, as the *Belair* case deals with flood water (*id.* at pp. 554-555), another body of law altogether, it is inapposite. Second, the *Belair* court's use of the phrase "failed to function as intended" was a means of fleshing out the requirement for pleading substantial causation (*id.* at p. 560) based upon the particular factual underpinnings of the case. In *Belair* the subject water had escaped from a dike constructed to protect a site that had been historically subject to flooding. (*Id.* at p. 556.) Therefore, to show that defendant's facility was a substantial cause of injury to that site, it was necessary for the plaintiff in *Belair* to eliminate the other probable causes of damage, i.e., natural flooding. This in turn required focusing on the functional capability of the failed public project: if the dike had overflowed after

---

[3]Reasonableness in the context of surface water inverse condemnation cases has to do with balancing the utility of the public project against the gravity of the harm caused to the plaintiff. "[T]he gathering of surface waters into a system of impervious storm drains which follow natural drainage routes may result in greatly increased volume, velocity and concentration of water, and thus may constitute an unreasonable method of disposing for such water when weighed against the seriousness of the resulting harm to lower landowners whose property is damaged as a result." (Van Alstyne, *op. cit. supra,* 20 Hastings L.J. at pp. 451-452, fn. omitted.)

it reached its design capacity, instead of when it was still below capacity, the cause of flooding might have been nature alone. (*Id.* at pp. 558-560.) Although nature had a hand in the injury produced in *Belair*, the dike there failed to protect plaintiff even when it was not operating at capacity, thus it failed to function as intended, presenting a substantial cause of the injury. (*Id.* at p. 560.)

The facts of the case at bench present no similar obstacle. The allegations allow the reasonable inference that plaintiffs' property was not subject to historical flooding; the complaint also expressly alleges that the repeated incidents of inundation suffered by plaintiffs dates from the time the upland subdivision was developed.

█ Third, we note that the policies governing surface water and flood control inverse condemnation cases are different. In flood cases, as *Belair* states, the purpose of requiring allegations of both substantial causation and unreasonableness on the part of the government entity defendant is to prevent discouraging construction of flood protection facilities. (47 Cal.3d at p. 558.) However, no such concern is involved in surface water cases. If anything, the opposite is true: surface water damage typically follows alteration of natural drainage patterns by a party who has developed a piece of property for profit, in this case a land subdivider, instituting improvements which are later incorporated into a governmental infrastructure. (See, e.g., *Frustuck* v. *City of Fairfax, supra,* 212 Cal.App.2d at pp. 362-363.) The courts have held that while this type of development "[is] socially beneficial, there [is] no reason why the economic cost incident to the expulsion of surface waters should be borne by the adjoining landowners, rather than by those undertaking such projects for profit." (*Sheffet, supra,* 3 Cal.App.3d at p. 731, citing *Armstrong* v. *Francis Corp.* (1956) 20 N.J. 320 [120 A.2d 4, 59, A.L.R.2d 413].)

Finally, we note that *Belair* is inapposite because it deals with *unintended* damage resulting from breach of a dike and the flooding that occurred thereafter. (*Belair, supra,* 47 Cal.3d at p. 554.) As *Burrows* noted, "in . . . surface water cases we do not usually deal with unintended, though foreseeable consequences of acts or omissions, but rather with intended results which may or may not be reasonable, depending on all of the circumstances." (*Burrows* v. *State of California, supra,* 260 Cal.App.2d at p. 34.)

█ The trial court erred in applying *Belair*'s pleading standards to a complaint alleging surface water invasions.

## IV

■ Plaintiffs allege that the city's unreasonable "failure to recognize" the obvious problem in design, and its corresponding unreasonable "failure to upgrade" the existing drainage system, resulted in damage to their property. Defendant contends these allegations undermine plaintiffs' cause of action for inverse condemnation because defendant is under no duty to upgrade existing systems to prevent damage caused by any and all future storms. But defendant is relying on inapposite flood control cases for authority. (E.g., *Tri-Chem, Inc.* v. *Los Angeles County Flood Control Dist.* (1976) 60 Cal.App.3d 306 [132 Cal.Rptr. 142]; *Shaeffer* v. *State of California* (1972) 22 Cal.App.3d 1017 [99 Cal.Rptr. 861] (overruled on other grounds in *County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 693 [119 Cal.Rptr. 491, 532 P.2d 139]).) The cited cases did not involve a failure to plead a cause of action for inverse condemnation under any possible theory. Instead, they concerned the plaintiffs' failure to prove the defendants' flood control projects caused flood waters to inundate plaintiffs' properties. (*Tri-Chem, supra,* 60 Cal.App.3d at pp. 310-312; *Shaeffer, supra,* 22 Cal.App.3d at pp. 1019-1021.) The defendants were not liable because the evidence disclosed the flood control projects decreased the amount of flooding that would otherwise have occurred naturally on the the plaintiffs' lands. (*Tri-Chem, supra,* at p. 310; *Shaeffer, supra,* at p. 1019.)

Unlike the cited cases, plaintiffs are not alleging defendant had a duty to build or upgrade a flood control system to prevent naturally occurring flood waters from flowing onto plaintiffs' land. (*Tri-Chem, supra,* 60 Cal.App.3d at pp. 308-312; *Shaeffer, supra,* 22 Cal.App.3d at pp. 1019-1021.) Instead, they are contending defendant approved the development of a subdivision, which increased the flow of surface waters, then built a culvert to divert these surface waters even though defendant knew, or should have known, the new culvert would empty into an existing drainage system with a significantly smaller capacity, inevitably causing plaintiffs' land to be flooded. In other words, plaintiffs are alleging defendant had a duty to prevent harm to plaintiffs' land caused by conditions defendant approved or created. Since the cited cases do not hold that a defendant has no duty to upgrade an existing drainage system to accommodate an increase in and diversion of surface waters caused by the defendant, defendant's reliance on these cases is unavailing.

## Disposition

The judgment dismissing plaintiffs' second amended complaint should be reversed and the trial court ordered to overrule the general demurrer to the second amended complaint. Plaintiffs should recover their costs on appeal.

Blease, Acting P. J., and Sims, J., concurred.