Filed 1/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SIERRA PALMS HOMEOWNERS ASSOCIATION,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>METRO GOLD LINE FOOTHILL EXTENSION CONSTRUCTION AUTHORITY et al.,<br><br>      Defendants and Respondents. | B275241<br><br>(Los Angeles County Super. Ct. No. BC580891) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Reversed and remanded as to Metro Gold Line Foothill Extension Construction Authority.  Affirmed as to Foothill Transit Constructors.

        Law Offices of Wayne Kreger and Wayne S. Kreger for Plaintiff and Appellant Sierra Palms Homeowners Association.

Nossaman, David Graeler and Bradford B. Kuhn for Defendant and Respondent Metro Gold Line Foothill Extension Construction Authority.

Murphy & Evertz, Douglas J. Evertz and Jennifer McClure for Defendant and Respondent Foothill Transit Constructors.

_____

Sierra Palms Homeowners Association sued Metro Gold Line Foothill Extension Construction Authority (Metro) and Foothill Transit Constructors for inverse condemnation and other torts arising from the construction and maintenance of part of the Metro Gold Line railway that runs adjacent to the condominium complex Sierra Palms manages. The trial court sustained Metro's and Foothill Transit's demurrers to Sierra Palms's inverse condemnation claim in the second amended complaint without leave to amend, finding Sierra Palms lacked standing to bring that claim. The court also granted Metro's and Foothill Transit's motions to strike the remainder of the second amended complaint on the ground Sierra Palms had failed to comply with a stipulated court order granting it leave to file the amended complaint. On appeal from the judgment in favor of Metro and Foothill Transit, Sierra Palms challenges only the order denying it leave to amend its second amended complaint.

We reverse the judgment as to Metro. Despite its failure to do so below, Sierra Palms has demonstrated on appeal that it can amend its complaint to allege facts sufficient to support standing for an inverse condemnation claim against Metro. However, Sierra Palms has not shown it can amend its complaint to assert an inverse condemnation claim against Foothill Transit and has not challenged on appeal the trial court's order striking its other

2

claims against that entity.  Accordingly, we affirm the judgment as to Foothill Transit.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Parties*

Sierra Palms is a homeowner association created for the purpose of managing a common interest development consisting of 113 condominium units and common areas of property located in Azusa.  Metro, a municipal entity, and Foothill Transit, a private company, planned, constructed and/or maintained the Los Angeles Gold Line transit route, part of which runs adjacent to the Azusa property Sierra Palms manages.

2. *Sierra Palms's Lawsuit*

On May 5, 2015 Sierra Palms filed its original complaint against Metro and Foothill Transit alleging against each of them causes of action for negligence, inverse condemnation and nuisance (private and public).[1]  The gravamen of each claim was that these entities had constructed and/or maintained the Gold Line railway in a manner that interfered with the condominium owners' quiet enjoyment of their property and caused property damage, including damage to the condominium complex's block boundary wall, in a manner that, among other things, resulted in a government taking of property without just compensation.

---

[1]    The original complaint also named the Los Angeles County Metropolitan Transportation Authority (MTA) as a defendant. Sierra Palms later voluntarily dismissed the MTA.  (See fn. 2, below.)

### 3. *Metro's Demurrer*

Metro demurred to the complaint arguing Sierra Palms had failed to timely comply with the requirements of the Government Claims Act (Gov. Code, § 900 et seq.), barring the negligence and nuisance claims. As to the inverse condemnation claim, Metro argued Sierra Palms lacked any ownership interest in the property and thus lacked standing to proceed on that claim. Instead of opposing Metro's demurrer, Sierra Palms entered into a stipulation with Metro: Sierra Palms agreed it would file an amended complaint on or before August 22, 2015 asserting only a single cause of action for inverse condemnation against Metro based on property damage to a block boundary wall. Although Foothill Transit had not yet appeared in the action, the stipulation provided that any claim against Foothill Transit would also be limited to damage to the block boundary wall.[2] Metro and Foothill Transit were given 30 days from the date the first amended complaint was filed to file a responsive pleading. Finding good cause to approve the terms of the stipulation, the court entered the stipulation terms as a court order on July 28, 2015.

Sierra Palms filed its first amended complaint on September 10, 2015, nearly three weeks after the deadline imposed by the court's stipulated order. The first amended complaint improperly named the Los Angeles County Metropolitan Transit Authority (MTA), which had been dismissed from the case, and included claims for property damage broader than the block boundary wall. On September 18, 2015, without

---

[2] The stipulation also provided that MTA, represented by Metro's counsel, would be dismissed from the action without prejudice.

requesting leave from court and prior to any responsive pleading from Metro or Foothill Transit, Sierra Palms filed a second amended complaint that removed MTA from the complaint, but in all other respects, remained identical to the untimely filed first amended complaint.

Metro and Foothill Transit filed separate demurrers to the second amended complaint. Both argued, among other things, Sierra Palms lacked standing to proceed on the inverse condemnation claims against them because it had no ownership interest in the property. They also moved to strike the remainder of the second amended complaint as untimely and in violation of the court's stipulated order. Sierra Palms did not file an opposition to the demurrers or to the motions to strike. It did appear at the hearing telephonically. (In a subsequent filing, Sierra Palms's counsel explained he did not oppose the demurrers or the motions to strike because he had intended to cure the deficiencies in a third amended complaint and believed he would be granted leave of court to do so.)[3]

The trial court sustained Metro's and Foothill Transit's demurrers without leave to amend, finding Sierra Palms had not alleged an ownership interest in the property that was the subject of the inverse condemnation claims and, having filed no opposition, had not demonstrated how the complaint could be amended to show the requisite ownership interest necessary to support its standing to proceed on that claim. The court also granted Metro's and Foothill Transit's motions to strike the

---

[3]    The record on appeal does not include a transcript of the hearing or otherwise indicate the arguments, if any, Sierra Palms's counsel made at that hearing.

remainder of the complaint because it had been filed, without good cause, outside the time specified in the stipulated order and included claims broader than those authorized by that order.

Sierra Palms then filed a noticed motion for leave to file a third amended complaint. Based on its prior rulings sustaining the demurrers without leave to amend and striking the remaining causes of action in the complaint, the court entered judgment for Metro and Foothill Transit. Sierra Palms's motion for leave to file a third amended complaint was taken off calendar as moot. Sierra Palms filed a timely notice of appeal from the judgment.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. When the court's ruling sustaining a demurrer is challenged on appeal, we independently review the allegations on the face of the complaint and matters subject to judicial notice to determine whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

However, when, as here, the only the aspect of the court's ruling challenged on appeal is its denial of leave to amend, our review is limited to determining whether the court erred in denying the plaintiff an opportunity to cure the deficiency. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1162-1163 [describing two standards of review for order sustaining demurrer and denial of leave].) The question whether the trial

6

court "abused its discretion" in denying leave to amend "is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc., § 472c, subd. (a).) "The plaintiff has the burden of proving that an amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468; accord, *Aubry,* at p. 971.)

2. *Sierra Palms Has Demonstrated on Appeal the Complaint Can Be Amended To State an Inverse Condemnation Claim Against Metro*

"Article I, section 19 of the California Constitution permits private property to be 'taken or damaged for public use only when just compensation . . . has first been paid to, or into court for, the owner.' When there is incidental damage to private property caused by governmental action, but the governmental entity has not reimbursed the owner, a suit in 'inverse condemnation' may be brought to recover monetary damages for any 'special injury,' i.e., one not shared in common by the general public." (*Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, 362; accord, *California State Automobile Assn. v. City of Palo Alto* (2006) 138 Cal.App.4th 474, 479.)

An action may be maintained only by the real party in interest, that is, the person aggrieved by the alleged conduct or otherwise "beneficially interested" in the controversy. (Code Civ. Proc., § 367 ["[e]very action must be prosecuted in the name of the real party in interest except as otherwise provided by statute"]; see *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796; *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1204.) Ordinarily, in an inverse condemnation claim the real party is one with an ownership interest in the property damaged

or taken.  (See *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 119-120 ["[i]n order to state a cause of action for inverse condemnation, there must be an invasion or an appropriation of some valuable property right which the landlord possesses and the invasion or appropriation must directly and specially affect the landowner to his injury"]; see generally *Yue v. City of Auburn* (1992) 3 Cal.App.4th 751, 760 [discussing owner of private property's right to assert inverse condemnation action].)

However, multidwelling condominium projects present a special concern.  Frequently, the common areas of the complex are owned, as they are alleged to be in this case, in fractional shares by the unit owners, making ordinary standing requirements an obstacle to recovering damage to common areas. (See *Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162, 1173-1174 (*Windham*).)  For this reason, Civil Code section 5980 (section 5980) specially affords homeowners associations standing to sue for property damage to common areas or to a qualifying "separate interest" the association is obliged to maintain or repair.  (See § 5980 ["An association has standing to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name as the real party in interest and without joining with it the members, in matters pertaining to the following:  [¶] . . . [¶]  (b)  Damage to the common area.  [¶] (c)  Damage to a separate interest that the association is obligated to maintain or repair."].)

Addressing section 5980's predecessor, former Code of Civil Procedure section 383 (repealed and recodified twice without

substantive change),[4] the court in *Windham* found the authorization granted to homeowners associations to litigate claims for damage to common areas was clear from the language of the statute, and the public policy reasons for such an authorization, obvious: "'The rationale for allowing homeowners' associations to bring suit . . . is that "if the association does not have standing, the costs of prosecution of the case would not be a common expense, thus greatly increasing the difficulty of individual owners seeking redress against a corporate defendant [citation].' [Citation.] Furthermore, it would be a waste of resources of the courts and litigants if each individual owner were required to join in an action for damage to common areas arising out of an alleged breach of implied warranty. Because associations generally are required to manage, maintain and repair a project's common areas [citation], it would be illogical to deprive associations of the ability to sue to recover for damage to common areas they are obligated to repair. Because individual owners generally do not have the right to repair common areas, it would be inefficient to require or allow only those owners, rather than their association, to sue . . . to recover for damage to common areas. . . . Furthermore, to require individual owners to be named plaintiffs in an action for damage to common areas

---

[4]     The text in current section 5980 is substantively identical to that in its predecessor statutes, former Code of Civil Procedure section 383, subdivision (a), repealed in 2004 and recodified the same year without substantive change in Civil Code section 1368.3 (see Stats. 2004, ch. 754, § 7) and former Civil Code section 1368.3, repealed in 2012 and recodified the same year without substantive change in section 5980, effective January 1, 2014 (Stats. 2012, ch. 180, § 2).

would be contrary to [former] section 383's express provision that the association may sue '*in its own name* as *the* real party in interest and *without joining with it the individual owners.*'" (*Windham, supra,* 109 Cal.App.4th at pp. 1173-1174, fn. omitted.)

Seizing on a specific phrase in the discussion in *Windham* of the public policy reasons for affording standing to homeowners associations—the costs of suit to individual owners would greatly increase the difficulty of seeking redress "against a corporate defendant" (*Windham, supra,* 109 Cal.App.4th at p. 1174)—Metro contends section 5980's authorization to homeowner associations is limited to property damage claims asserted against private entities and does not include inverse condemnation claims against a government entity. However, nothing in the language of section 5980 supports that cramped interpretation of the statute, which confers standing on homeowners associations to litigate regarding certain matters without using the term "corporate defendants" or distinguishing in any other way between actions involving public or private defendants. (See generally *In re D.B.* (2014) 58 Cal.4th 941, 945-946 [statutory interpretation begins with examination of the statutory language; when the language is "clear and unambiguous," that is the end of the inquiry unless a literal meaning would result in absurd consequences the Legislature could not have intended]; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

Indeed, contrary to Sierra Palms's reading of *Windham*, that case suggests section 5980 should be read expansively. Confronted with the contention the legislative authorization to bring a claim for property damage to a common area did not include a cause of action premised on a breach of warranty, the *Windham* court rejected the argument as too narrow a

construction of the statutory language and contrary to the statutory purpose. By giving the homeowners association standing to sue for property damage to common areas as the real party in interest, the court explained, the Legislature necessarily intended that the association stand in the shoes of the property owner and be able to bring a claim for damage to the common area, regardless of theory. (See *Windham, supra*, 109 Cal.App.4th at p. 1174 [the Legislature intended "to allow associations to sue as real parties in interest for damage to common areas whether for breach of implied warranty or on any other theory of liability"].)

At oral argument Metro narrowed its challenge to Sierra Palms's standing under section 5980, contending, because an inverse condemnation claim is rooted in article I, section 19 of the California Constitution, which refers to payment of just compensation to the "owner" of private property taken for a public use, the Legislature is without jurisdiction to expand the standing requirements for such a claim to include a homeowners association. Although we have not found a California case addressing, much less applying, section 5980 (or its predecessor statutes) in an inverse condemnation context, Metro's suggestion that application of section 5980 would impermissibly enlarge the scope of the constitutional claim is incorrect. Section 5980 does not confer on a homeowners association an additional substantive right to recover in inverse condemnation along with the property owners. It merely makes it easier (and, in many situations, possible) for owners of fractional property interests in common areas to obtain redress by permitting their homeowners association in limited circumstances to bring the action on their behalf in a representative capacity. The Legislature's authority

11

to regulate civil proceedings in this manner is broad. (See *Briggs. v. Brown* (2017) 3 Cal.5th 808, 846 ["'"[T]he mere procedure by which jurisdiction is to be exercised may be prescribed by the Legislature, unless . . . such regulations should be found to substantially impair the constitutional powers of the courts, or practically defeat their exercise." [Citations.]'"]; see also *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1104.)

Here, in its proposed third amended complaint and on appeal, Sierra Palms has demonstrated it can amend its complaint to show standing under section 5980 to state a claim against Metro for inverse condemnation based on damage to a common boundary wall. No allegation it owned the common area is needed. While it certainly would have been better practice for Sierra Palms to have presented its argument for standing under section 5980 to the trial court in direct response to Metro's demurrer, our task at this point is simply to determine whether it has demonstrated on appeal the complaint can be amended to state an inverse condemnation claim. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at p. 971.) It has.

### 3. *Sierra Palms Has Forfeited Its Challenge to the Judgment in Favor of Foothill Transit*

Sierra Palms does not contend in its brief on appeal that it can amend its complaint to state a cause of action for inverse condemnation against Foothill Transit, a private entity. Furthermore, although it contends generally that it could have amended its complaint to state a negligence action against Foothill Transit limited to the block boundary wall, it has not argued the trial court abused its discretion in granting Foothill Transit's motion to strike the second amended complaint (after sustaining the demurrer to the inverse condemnation claim) for

its willful failure to comply with the court's stipulated order. Accordingly, Sierra Palms has forfeited any challenge to that decision and necessarily, by extension, to the properly entered judgment in Foothill Transit's favor. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed forfeited or waived]; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 729, fn. 1 [same]; *Wall Street Network, Ltd v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177-1178 ["[g]enerally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal"].)

## DISPOSITION

The judgment is reversed as to Metro Gold Line Foothill Extension Construction Authority, and the matter is remanded for further proceedings in accordance with the views expressed in this opinion. In all other respects, and as to Foothill Transit Constructors, the judgment is affirmed. Each party is to bear its own costs on appeal.


PERLUSS, P. J.

We concur:



ZELON, J.



SEGAL, J.

13