Filed 9/26/13  Neilson v. City of California City CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| N. L. NEILSON, Plaintiff and Appellant, v. CITY OF CALIFORNIA CITY, Defendant and Respondent. | F066007 (Super. Ct. No. CV-276204) **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

N. L. Neilson, in pro. per., for Plaintiff and Appellant.

Lemieux & O'Neill and W. Keith Lemieux for Defendant and Respondent.

-ooOoo-

Plaintiff N. L. Neilson challenged the validity of a special tax approved by more than two-thirds of the voting residents of defendant City of California City (California City). The special tax, known as Measure A, was for the purpose of paying for police and fire protection, among other things, and it imposed a flat tax of $150 per lot or parcel of real property in California City. Plaintiff claimed that the special tax violated the equal protection clause of the United States Constitution because it was not assessed in proportion to property values. After analyzing the relevant case law, the trial court concluded that plaintiff failed to allege facts constituting a violation of federal equal protection principles and it sustained the demurrer to plaintiff's first amended complaint without leave to amend. Plaintiff appealed. We agree with the trial court's conclusion and affirm the judgment below.

## FACTS AND PROCEDURAL HISTORY

*Special Tax Approved by the Voters*

The facts are not in dispute. On November 22, 2011, the City Council of California City passed a resolution calling for a municipal election on March 6, 2012, to consider whether to approve a special tax referred to as Measure A. The question to go before the voters was this: "Shall a city-wide special tax of up to $150.00 per lot or parcel be approved for each of six (6) fiscal years beginning July 1, 2012, for (1) police operations, training and supplies, personnel, equipment, law enforcement, dispatch, code enforcement, animal control, and facilities, and (2) fire prevention and suppression operations, training and supplies, firefighter and paramedic personnel, equipment and facilities?"

At the March 6, 2012 election, more than two-thirds of the California City voters who participated in the election—specifically, 68.33 percent—approved the special tax.

2.

*Proceedings in the Trial Court*

Plaintiff, a nonresident who owns real property in California City, brought suit to challenge the validity of the special tax. The operative pleading, the first amended complaint, was filed on July 20, 2012. In the first amended complaint, plaintiff claimed that the special tax violated the equal protection clause of the United States Constitution because the tax was disproportionate to the value of the property taxed. Allegedly, "[t]he City's flat-rate parcel tax that is $150 for each parcel regardless of any value or value standard or relative to their property holdings is in conflict with U.S. Case Law." In particular, plaintiff alleged that the special tax violated equal protection standards articulated in the case of *Allegheny Pittsburgh Coal v. Webster County* (1989) 488 U.S. 336 (*Allegheny*).

On August 10, 2012, California City generally demurred to plaintiff's first amended complaint. Oral argument was heard on September 12, 2012. After the completion of oral argument, the trial court sustained the demurrer without leave to amend and dismissed plaintiff's action. A written order sustaining the demurrer without leave to amend was filed that same day. On the question of whether the special tax violated the equal protection clause, the trial court's written order stated:

> "1. Plaintiff fails to state a cause of action for a violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. The special tax does not draw an unfair distinction between similarly situated properties. Plaintiff's Complaint concedes that the special tax taxes all parcels the same amount. Therefore the Complaint does not state a violation of equal protection. (See *Gregory v. Ashcroft* (1991) 501 U.S. 452, 471 [equal protection standard].)

> "2. Allegh[*e*]*ny*[, *supra*,] 488 U.S. 336; *Sioux City Bridge Co. v. Dakota County* (1923) 260 U.S. 441 and *Cumberland Coal Co. v. Board of Revision* (1931) 284 U.S. 23, 25 [(*Cumberland Coal Co.*)], require that an *ad valorem* tax be assessed using a uniform standard on all property. But these cases nowhere state that all special taxes assessed against property owners must be *ad valorem* or based on size or acquisition.

3.

"3.  It is clear based on the allegations contained in the Complaint and the documents presented by the City that the tax at issue is a special parcel tax, not an ad v[a]lorem tax, excise tax, special assessment, or a fee.  Plaintiff has admitted that the tax was adopted by a 2/3 vote of the electorate of the City.  It is therefore a valid tax under California law."

Notice of entry of the trial court's order sustaining the demurrer without leave to amend was filed and served on September 14, 2012.  The trial court's dismissal of the entire action in conjunction with sustaining demurrer without leave will be treated as tantamount to a final judgment.[1]  Plaintiff's timely appeal followed.

*Summary of Previous Legal Challenges by Plaintiff*

The present case is not the first time plaintiff has challenged a special tax adopted by California City voters.  Plaintiff has prosecuted two prior actions challenging nearly identical versions of the special tax at issue here.  Both of the prior actions were dismissed on demurrer by the trial court because plaintiff failed to state a cause of action and, in both cases, we affirmed the trial court's decision on appeal.  We briefly highlight the prior actions as background to the instant appeal.

In 2004, plaintiff filed a lawsuit seeking to invalidate a special tax adopted at that time by the voters of California City.  The 2004 special tax was in all material respects identical to the present tax now before us.  The only differences were that the 2004 special tax was for $75 instead of $150 per parcel, was effective for only three years and was dedicated to pay for a wider array of special purposes.  Plaintiff's second amended complaint alleged that the 2004 special tax was invalid because (1) it was not apportioned according to value as allegedly required by the California Constitution, (2) it was not a

---

[1]     Although the trial court neglected to enter a formal judgment of dismissal following the sustaining of the demurrer without leave to amend, it is clear the trial court intended to do so.  Not only was leave to amend denied, but a dismissal of the action was ordered from the bench and included in the minutes of the court register.   Under the circumstances, we exercise our discretion to deem that the order sustaining demurrer without leave is modified to include a judgment of dismissal.  (*Estate of Dito* (2011) 198 Cal.App.4th 791, 799-800.)

special tax, and (3) it violated the equal protection clause of the United States and California Constitutions because nonresident property owners did not get an opportunity to vote on the tax. California City demurred, and the trial court sustained the demurrer to the second amended complaint without leave to amend. Plaintiff appealed. That appeal resulted in a published opinion, *Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, in which we rejected each of plaintiff's arguments and affirmed the judgment of dismissal because plaintiff failed to state a cause of action. (*Id.* at pp. 1301, 1318.)

In March 2007, the voters of California City passed a new special tax. Shortly thereafter, plaintiff filed a complaint challenging the validity of the 2007 special tax. The special tax was essentially the same as the one now before us, except it was for $100 per parcel instead of $150 and it included additional special purposes. Plaintiff argued the 2007 special tax violated the equal protection clause of the United States Constitution because it was a tax on property that was not proportional to value (not ad valorem), which allegedly violated the equal protection principles set forth in the case of *Allegheny*, *supra*, 488 U.S. 336. As before, the trial court sustained the demurrer by California City without leave to amend and plaintiff appealed. In a nonpublished opinion, *Neilson v. City of California City* (July 1, 2008, F053320), we rejected plaintiff's claims and affirmed the judgment of the trial court. Solely as background to the present appeal, we note our holding in that nonpublished opinion: "We conclude that the equal protection clause, as discussed by the United States Supreme Court in *Allegheny*[, *supra*,] 488 U.S. 336 … and elsewhere, does not require a parcel tax to be in proportion to the value of the parcel. Consequently, plaintiff failed to state a cause of action and the superior court correctly sustained the demurrer."

As will be seen, here we are again, addressing substantially the same issues in the present appeal.

5.

## DISCUSSION

### I.     Standard of Review

On appeal from a judgment of dismissal after sustaining a demurrer without leave to amend, the standard of review is as follows:  "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]' [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]"  (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 966-967.)

Whether a complaint has stated a cause of action is an issue of law (*Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224, 1231), which we review de novo (*Holcomb v. Wells Fargo Bank*, *N.A.* (2007) 155 Cal.App.4th 490, 495).

### II.     Plaintiff Failed to State a Claim Under Equal Protection Clause

The sole question before us is whether plaintiff stated a cause of action for violation of the equal protection clause of the United States Constitution.  Plaintiff argues that the special tax violated the equal protection clause because, as a flat-rate parcel tax, it was not proportional to property values.  According to plaintiff, any tax on property that is not assessed according to property values inevitably creates disparities that are not permitted under the case law interpreting the equal protection clause.  California City responds that since the special tax treated all parcels alike by taxing them in the same amount ($150 per year), and since the classifications or line-drawing entailed in the

special tax were rationally related to legitimate government purposes, it passed muster under the equal protection clause. California City is correct.

A. General Principles of Equal Protection

The equal protection clause of the Fourteenth Amendment to the United States Constitution provides: "[N]o State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" (U.S. Const., 14th Amend., § 1.) The clause is "essentially a direction that all persons similarly situated should be treated alike" under the law. (*Cleburne v. Cleburne Living Center, Inc*. (1985) 473 U.S. 432, 439.) "Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. [Citation.]" (*Nordlinger v. Hahn* (1992) 505 U.S. 1, 10 (*Nordlinger*).)

"'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) When a statutory classification is challenged on equal protection grounds, most legislation is reviewed only to determine whether the classification bears a rational relationship to a legitimate state interest. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200.) "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.]" (*FCC v. Beach Communications, Inc*. (1993) 508 U.S. 307, 313-314.) "Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' [Citation.] This standard of review is a paradigm of judicial restraint. 'The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how

unwisely we may think a political branch has acted.' [Citation.]" (*Ibid*., fn. omitted; accord, *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481-482.)

"On rational-basis review, a classification in a statute ... comes to us bearing a strong presumption of validity, [citation], and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it,' [citation]." (*FCC v. Beach Communications, Inc*., *supra*, 508 U.S. at pp. 314-315.) "'[L]egislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' [Citation.] Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." (*Nordlinger*, *supra*, 505 U.S. at p. 10.)

The rational basis test has been held to be the applicable level of scrutiny in equal protection challenges to property tax classifications. In *Nordlinger*, the United States Supreme Court addressed whether the assessment method set forth in article XIII A of the California Constitution violated the equal protection clause because it resulted in disparities in taxation of properties of comparable value. The Supreme Court concluded that article XIII A did not violate the equal protection clause, even though it created such disparities, because there were rational policy considerations that supported the system. (*Nordlinger*, *supra*, 505 U.S. at pp. 12-16.) In the course of its discussion, the court set forth the basic principles that apply when a tax is challenged on equal protection grounds: "The appropriate standard of review is whether the difference in treatment between newer and older owners rationally furthers a legitimate state interest. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, [citation], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental

8.

decisionmaker, [citation], and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, [citation].  This standard is especially deferential in the context of classifications made by complex tax laws.  '[I]n structuring internal taxation schemes "the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation."'" (*Id*. at p. 11.)

Based on the foregoing, it is clear that the appropriate level of scrutiny applicable to plaintiff's challenge to California City's special tax is the rational basis test.

B.      A Rational Basis Supports the Special Tax

Applying the rational basis test here, we conclude that the classification used in the special tax rationally furthered plausible policy objectives of California City.  The special tax, which was adopted for the special purpose of paying for police operations and fire prevention, among other things, applied a uniform standard by taxing each lot or parcel in the equivalent amount—that is, $150.  The system of taxing each parcel or lot in an equal sum each year to fund police and fire services was reasonably supportable by reference to plausible and legitimate objectives of the municipality and of the electorate that approved the tax.  As pointed out by California City, the potential virtues or benefits of such a flat-rate, per-parcel special tax to support local police and fire services would include:  "(1) it allows taxpayers to properly anticipate future tax liability without relying on a projection of future real estate market values; (2) it allows the city to have a precise fixed projection for revenue; (3) it addresses concerns about 'fairness' by assessing all parcels equally; and (4) it is extremely easy for taxpayers to calculate."   Since the special tax rationally furthered such plausible objectives, it must be upheld under the rational basis test against plaintiff's equal protection challenge.  (*Nordlinger*, *supra*, 505 U.S. at p. 11 ["In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification .…"].)  Therefore, plaintiff's equal protection challenge fails.

9.

C.      Case Law Relied on by Plaintiff Distinguishable

In support of his claim that the special tax in this case violated the equal protection clause, plaintiff primarily relies on *Allegheny*, *supra*, 488 U.S. 336. His basic contention is that the burden of property taxes must always be in proportion to "value" or based on a "value standard" to satisfy the equal protection clause. In support of that contention, plaintiff recites the following passage from *Allegheny*: "[T]he fairness of one's allocable share of the total property tax burden can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings." (*Id*. at p. 346.) We note further that *Allegheny* also expressed approval of the general principle articulated in earlier cases such as *Cumberland Coal Co.*, *supra*, 284 U.S. at pages 28-29, to the effect that "'[I]ntentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.'" (*Allegheny*, *supra*, at p. 345.)

The statements in *Allegheny* relied on by plaintiff must be understood in their proper context. *Allegheny* involved a challenge to the way West Virginia's property tax laws were being unequally applied by a county assessor. (*Allegheny*, *supra*, 488 U.S. at pp. 339-340.) The West Virginia Constitution specifically provided that taxation would be equal and uniform throughout the state and that all property would be taxed in proportion to its value. (*Allegheny*, *supra*, at p. 338.) The assessor for Webster County, West Virginia set the appraised value of property on the basis of its most recent purchase price, but only made minor adjustments to the assessment of land that had not been recently sold. (*Ibid*.) The latter adjustments, however, were small compared to the actual increase in property values. "This approach systematically produced dramatic differences in valuation between [Allegheny's] recently transferred property and otherwise comparable surrounding land. For the years 1976 through 1982, Allegheny was assessed and taxed at approximately 35 times the rate applied to owners of comparable properties." (*Id*. at p. 341.) Because West Virginia law required all property

10.

to be taxed at a uniform rate throughout the state according to its value, and because that state law was being systematically thwarted by the practice used by Webster County officials to grossly undervalue certain properties, Allegheny was denied equal protection of the law.  (*Id.* at pp. 345-346.)

In so holding, the Supreme Court noted that it was not reaching the issue of "whether the Webster County assessment method would stand on a different footing if it were the law of a State, generally applied, instead of the aberrational enforcement policy it appears to be." (*Allegheny*, *supra*, 488 U.S. at p. 344, fn. 4.)  That same footnote observed that the State of California had recently adopted such a law, a constitutional provision known as Proposition 13:  "Proposition 13 generally provides that property will be assessed at its 1975-1976 value, and reassessed only when transferred or constructed upon, or in a limited manner for inflation.  [Citation.]  The [California] system is grounded on the belief that taxes should be based on the original cost of property and should not tax unrealized paper gains in the value of the property."  (*Allegheny*, *supra*, at pp. 344-345, fn. 4.)

*Nordlinger* further explained and clarified the decision in *Allegheny*.  In *Nordlinger*, the petitioners challenged the acquisition-value assessment method contained in article XIII A of the California Constitution (i.e., Proposition 13) on equal protection grounds.  The United States Supreme Court observed that article XIII A, like the assessment practice in *Allegheny*, "resulted in dramatic disparities in taxation of properties of comparable value." (*Nordlinger*, *supra*, 505 U.S. at p. 14.)  Nevertheless, applying the rational basis test, the court concluded there were rational or reasonable considerations that supported the system of taxation provided in article XIII A. (*Nordlinger*, *supra*, at pp. 12-13.)  Accordingly, article XIII A of the California Constitution did not violate the equal protection clause.  (*Nordlinger*, *supra*, at pp. 16-18.)

11.

In *Nordlinger*, the United States Supreme Court expressly distinguished *Allegheny* by noting that in *Allegheny*, there was an "absence of any indication … that the policies underlying an acquisition-value taxation scheme could conceivably have been the purpose for the Webster County tax assessor's unequal assessment scheme." (*Nordlinger*, *supra*, 505 U.S. at p. 15.)  Moreover, the court noted that in *Allegheny*, the West Virginia Constitution and statutes required that "'all property of the kind held by [Allegheny] shall be taxed at a rate uniform throughout the State according to its estimated market value,' and the [*Allegheny*] Court found 'no suggestion' that 'the State may have adopted a different system in practice from that specified by statute.'" (*Nordlinger*, *supra*, at p. 15.)

Here, plaintiff is not contending that the special tax approved by California City voters was unequally applied.  Instead, plaintiff claims that the law itself, when applied exactly as written (on an equal basis of $150 per parcel), has denied him equal protection. On these facts, *Allegheny* is clearly distinguishable.  *Allegheny* merely articulated equal protection principles in the context of the particular ad valorem property tax law in effect in West Virginia, where that law had been administered in a grossly unequal manner by an errant county assessor.  Additionally, *Allegheny* did not hold that all forms of taxation of property must be ad valorem, nor did it even address that issue.  Hence, the opinion relied upon by plaintiff does not support his position.

D.      State Law Does Not Support Plaintiff's Claim

Hypothetically, plaintiff could potentially state a cause of action for violation of the equal protection clause *if* he could show that a law exists *requiring* special taxes to be assessed in proportion to property value.  Plaintiff argues, as he did in his prior appeals, that under California law all taxes on real property must be ad valorem.  Whether we may like the outcome or not, plaintiff remains mistaken on that issue.

We do not approach the question on a blank slate.  In *Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481 (*Heckendorn*), the City of San Marino levied a special tax

to support police and fire services after the measure was approved by nearly 80 percent of the city's voters. The special tax was a tax on parcels of real property; but instead of applying a flat amount per parcel, it was graduated based on the size of the parcel. (*Id*. at pp. 483-486.) A resident challenged the graduated tax as effectively being an ad valorem tax on real property prohibited by article XIII A of the California Constitution because it allegedly exceeded "the maximum amount allowed by the California Constitution." (*Heckendorn*, *supra*, at p. 485.) The California Supreme Court first summarized the relevant provisions of article XIII A, as follows: "Article XIII A, section 1 of the California Constitution limits ad valorem taxes on real property to 1 percent of the property's full cash value. Section 4 of that article restricts the ability of cities, counties and special districts to impose special taxes by requiring a two-thirds vote of approval by qualified electors. Section 4 also prohibits the imposition of a special tax that is an ad valorem tax on real property." (*Heckendorn*, *supra*, at p. 486.) Was the tax in question an impermissible ad valorem tax on real property? The California Supreme Court held that the tax was *not* an ad valorem tax since it was not levied on an assessment of property value. Instead, the tax was a valid special tax as authorized by article XIII A, section 4 of the California Constitution. (*Heckendorn*, *supra*, at pp. 486-489.) In so holding, the court construed the constitutional language in article XIII A, section 4, as being consistent with relevant statutory provisions, including Government Code section 53978, subdivision (b), which provided that a special tax for police or fire protection may be levied "'on a parcel, class of improvement to property, or use of property basis, or a combination thereof.…'" (*Heckendorn*, *supra*, at p. 488.) If, as plaintiff has contended herein, all taxes on real property must be ad valorem, our Supreme Court could not have reached the decision it did in the *Heckendorn* case.

In *Neilson v. City of California City*, *supra*, 133 Cal.App.4th 1296, plaintiff argued that, under certain provisions of the California Constitution, all taxes imposed on real property in this state had to be ad valorem taxes and, as a result, the 2004 special tax

challenged in that case was invalid because it was a flat per-parcel tax.  Here is what we said in rejecting that contention:

> "In his opening brief, plaintiff asks this court to settle a question of law concerning the meaning of a particular phrase in section 4 of article XIII A.  That section provides in full:  'Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, *except ad valorem taxes on real property* or a transaction tax or sales tax on the sale of real property within such City, County or special district.'  (Art. XIII A, § 4, italics added.)

> "Plaintiff contends that (1) the California Constitution requires that taxes based on the mere ownership of real property must be ad valorem taxes, and (2) section 4 of article XIII A cannot be read to mean local governments are granted the authority to adopt non-ad valorem taxes, whether general or special, on the mere ownership of real property.

> "Another constitutional provision relevant to plaintiff's argument, however, is the limitation on property taxes, assessments, fees and charges set forth in Proposition 218:

> "'(a)  No tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership except:

> "'(1)  The ad valorem property tax imposed pursuant to Article XIII and Article XIII A.

> "'(2)  Any special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A.

> "'(3)  Assessments as provided by this article.

> "'(4)  Fees or charges for property related services as provided by this article.'  (Art. XIII D, § 3.)

> "The use of the phrase '[a]ny special tax' and the language in article XIII D, section 3, subdivision (a) that introduces the enumerated exceptions clearly establish that a special tax receiving a two-thirds vote may be imposed 'upon any parcel of property or upon any person as an incident of property ownership.'  Therefore, to harmonize the constitutional provisions we must reject plaintiff's interpretation of section 4 of article XIII A.  *Instead, we conclude that a non-ad valorem tax may be*

14.

> *imposed upon real property if the tax is a 'special' tax dedicated to specific purposes and approved 'by a two-thirds vote of the qualified electors of' the city, county, or special district imposing the tax.* (Art. XIII A, § 4.)" (*Neilson v. City of California City*, *supra*, at pp. 1307-1308, italics added, fn. omitted.)

No relevant change in the law has occurred since we reached this conclusion. We will not revisit that conclusion here.

Finally, plaintiff erroneously relies on *Thomas v. City of East Palo Alto* (1977) 53 Cal.App.4th 1084 (*Thomas*) [a *general* tax on parcels was a property tax and not an excise tax; question whether it was a special tax was not reached, since it did not receive two-thirds voter approval], and *City of Oakland v. Digre* (1988) 205 Cal.App.3d 99 (*Digre*) [a *general* tax on parcels passed by simple majority was invalid under article XIII A of the California Constitution]. Although some of the broad wording contained in these cases could arguably be construed as aiding plaintiff's position if taken out of context, both cases were merely addressing the subject of *general*, not special, taxes. Neither case reached the specific issue of whether the tax in question would have been valid as a special tax. (*Thomas*, *supra*, at pp. 1086, 1094, fn. 8; *Digre*, *supra*, at pp. 104, 109-111.) Accordingly, both cases are distinguishable.

It is clear that California law does not assist plaintiff in his attempt to show that California City's special tax violated the equal protection clause of the United States Constitution. For all of the reasons noted herein, we conclude that the trial court correctly determined that plaintiff failed to state a cause of action.

15.

## **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to California City.

_____

Kane, J.

WE CONCUR:


_____

Wiseman, Acting P.J.


_____

Levy, J.

16.